**DIAMOND WALNUT GROWERS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DIAMOND WALNUT GROWERS, INC., Respondent.**

Nos. 93–70856, 93–70908.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided May 18, 1995.

nia, sitting by designation.

Robert G. Hulteng, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Francisco, CA, for petitioner-respondent.

Charles P. Donnelly, N.L.R.B., Washington, DC, for respondent-petitioner.

Before: GOODWIN, CANBY, and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge:

## OVERVIEW

Diamond Walnut Growers, Inc. petitions for review of a decision and order of the National Labor Relations Board. The Board found that Diamond violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by filing a libel suit. The Board cross-petitions for enforcement and asks us summarily to affirm its finding that Diamond violated Section 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5), by refusing to provide the union with the names and addresses of all workers performing work within the bargaining unit. We have jurisdiction under 29 U.S.C. §§ 160(e) and (f). We deny Diamond's petition for review, affirm the Board's findings, and grant the Board's petition for enforcement.

## I

## FACTS

In September 1991, the Cannery Workers, Processors, Warehousemen and Helpers Union, Local No. 601, International Brotherhood of Teamsters, AFL–CIO (the Union) called a strike against Diamond. Soon after the strike began, the California School Employees Association ("CSEA") wrote a letter to Diamond's major customers announcing a boycott. The letter stated that "Diamond refuses to negotiate with the members of the [Union]." On October 31, 1991, Diamond, in response to this letter, filed a libel suit against CSEA, the Union and ten anonymous "Doe Associations." The Union and CSEA filed a demurrer. The California Superior Court sustained the demurrer, finding that CSEA's allegedly libelous statement constituted a protected statement of opinion.

The Union then filed an unfair labor practice charge with the Board. After a hearing, an Administrative Law Judge concluded that,

by failing to provide the Union with the names and addresses of persons working within the bargaining unit, Diamond violated Sections 8(a)(1) and (5) of the Act. The ALJ also concluded that, by "initiating and maintaining a baseless civil action against [the Union] in retaliation for protected concerted activity of its members," Diamond violated Section 8(a)(1) of the Act. On appeal, the Board upheld and adopted the ALJ's decision in its entirety. See Diamond Walnut Growers, 312 N.L.R.B. 61, 1993 WL 356124 (1993).

## II

## ANALYSIS

### A. Standard of Review

■ We review the Board's decision to determine whether its factual findings are supported by substantial evidence and whether it properly applied the law. NLRB v. Musicians Union AFM Local 6, 960 F.2d 842, 844 (9th Cir.1992). We give deference to the Board's interpretation of the Act, because of its "special competence in applying the general provisions of the Act to the complexities of industrial life." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 742, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983).

### B. The Board's Uncontested Findings

■ The Board found that Diamond violated Section 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5), by refusing to provide the Union with the names and addresses of current workers. Diamond does not challenge these findings. We thus summarily affirm this part of the Board's decision. See Sparks Nugget, Inc. v. NLRB, 968 F.2d 991, 998 (9th Cir.1992).

### C. The *Bill Johnson's* Standard

■ Section 8(a)(1) of the Act provides that "[i]t shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the Act]." 29 U.S.C. § 158(a)(1). Filing a lawsuit may, under certain circumstances, violate Section 8(a)(1) if the lawsuit is filed in retaliation

against an employee for the exercise of protected Section 7 rights. *See Bill Johnson's,* 461 U.S. at 744, 103 S.Ct. at 2170–71.

Here, the Board deemed Diamond's lawsuit "meritless," and considered only whether the lawsuit was filed with a retaliatory motive. According to the Board, "if the plaintiff's lawsuit has not prevailed, its lawsuit is deemed meritless, and the Board's inquiry ... proceeds to resolving whether the respondent/plaintiff acted with a retaliatory motive in filing the lawsuit." *Diamond,* 312 N.L.R.B. at 68 (citation omitted). Diamond argues that this approach was erroneous. According to Diamond, in order for the filing of a lawsuit to constitute an unfair labor practice, the lawsuit must be filed with a retaliatory motive and be meritless in the sense of lacking a reasonable basis in fact or law. By failing to consider whether the lawsuit lacked a reasonable basis in fact or law at the time it was filed, Diamond urges, the Board erred.

 Diamond is mistaken. Whether a lawsuit lacks a reasonable basis in fact or law is relevant only to whether the Board may *enjoin* a lawsuit. *See Bill Johnson's,* 461 U.S. at 748, 103 S.Ct. at 2172–73 (In order to "halt the prosecution of a state-court lawsuit, regardless of the plaintiff's motive," the lawsuit must lack "a reasonable basis in fact or law"). After a lawsuit is over, however, the standard changes. If the suit results "in a judgment adverse to the plaintiff, the Board may then consider the matter further and, if it is found that the lawsuit was filed with retaliatory intent, the Board may find a violation and order appropriate relief." *Id.* at 749, 103 S.Ct. at 2173. Thus, bringing an action that proves unmeritorious may constitute an unfair labor practice, even though the suit did not lack a reasonable basis in law or fact at the time it was filed. *Accord NLRB v. Int'l Union of Operating Eng'rs,* 15 F.3d

677, 679 (7th Cir.1994).[1] *See also Dash v. NLRB,* 793 F.2d 1062, 1070 (9th Cir.1986) (after the employer loses a lawsuit, the inquiry is "whether the employer filed the suit in retaliation for the employee's exercise of protected rights ...").

The cases relied upon by Diamond are not on point. *See Professional Real Estate Investors v. Columbia Pictures Indus.,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *Liberty Lake Investments, Inc. v. Magnuson,* 12 F.3d 155 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 32 (1994). These cases deal with anti-trust "sham" litigation, and do not alter the approach to section 8(a)(1) retaliatory lawsuits outlined by the Supreme Court in *Bill Johnson's.*[2] It is true that *Bill Johnson's* states that similar concerns about access to the courts "led us in the antitrust context to adopt the 'mere sham' exception...." *Bill Johnson's,* 461 U.S. at 744, 103 S.Ct. at 2170. But in so stating, the Court did not purport to equate the two standards. After a lawsuit proves unsuccessful, access to the courts is of diminished concern. Diamond has had its day in court. The question now is whether its suit against the Union was a retaliation against the workers for striking.

## D. Diamond's Retaliatory Motive

 Diamond maintains that the Board erred in concluding that the lawsuit was filed with a retaliatory motive. The Board reasoned that "[b]ecause [Diamond's] lawsuit against the Union was baseless ... [Diamond's] motive was retaliatory." *Diamond* 312 N.L.R.B. at 69. According to Diamond, the Board did not independently consider whether the suit was filed with a retaliatory motive. Instead the Board simply concluded that because the lawsuit did not prevail, it

1. *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405 (10th Cir.1992), cited by Diamond, is not on point. *Martin* involved the Fair Labor Standards Act and did not consider whether a suit that *did not prevail, but nevertheless was not* frivolous, could constitute a violation of Section 8(a)(1) of the NLRA.

2. Diamond also cites *Sheet Metal Workers' Int'l Assoc. v. NLRB,* 716 F.2d 1249 (9th Cir.1983) for

the proposition that "[t]his court has refused to enforce the Board's conclusion that a union committed an unfair labor practice by filing a state court action against employees because the Board had failed to evaluate the baselessness of the union's complaint." In *Sheet Metal,* though, the Board *enjoined* prosecution of the suit without determining that the lawsuit was baseless. *Id.* at 1264.

must have been filed with a retaliatory motive.

We do not read the Board's decision that way. The Board did not rest its ruling on an equation between lack of merit and retaliation. After concluding that the lawsuit was unsuccessful and thus "meritless," the Board considered whether Diamond—even assuming that it was defamed—had any reason to sue *the Union*. Although· Diamond proffered several reasons why it believed that the Union was involved with the allegedly defamatory statement, the Board properly found these reasons wanting.[3] The Board thus concluded that Diamond lacked any reasonable basis for suing the Union, as opposed simply to CSEA, and that the lawsuit against the Union was therefore "baseless." By "baseless," then, the Board did not mean that the lawsuit had not prevailed, it meant that Diamond had no reason to sue *the Union*. The Board's reasoning provides additional support for its finding of a retaliatory motive. Even if Diamond were defamed, it had no legitimate reason to sue the Union. It was therefore likely that Diamond filed against the Union in retaliation for the employees' exercise of their right to strike.

■ Moreover, a lawsuit's failure on the merits is relevant to whether the lawsuit was filed with a retaliatory motive. Here, for example, the lawsuit's failure undermines Diamond's claim that it filed the suit to defend its legally protectable interests. The Board is thus "warranted in taking [the lawsuit's failure on the merits] into account in determining whether the suit had been filed in retaliation for the exercise of the employees' § 7 rights," *Bill Johnson's*, 461 U.S. at 747, 103 S.Ct. at 2172. Although it is true, as Diamond contends, that the mere lack of a lawsuit's success does not *by itself* establish retaliation, it may be taken into account along with other factors in determining retaliatory motive. Thus the Board properly considered both the lack of success on the mer-

its, and the lack of any connection between the alleged defamation and the Union.

The Board also did not rest its decision simply on these two reasons. The Board properly indicated that its finding of retaliatory motive "is supported by one other factor. [Diamond] sought $500,000 in punitive damages." *See Phoenix Newspapers,* 294 N.L.R.B. 47, 49–50, 1989 WL 224213 (1989); *cf. Sheet Metal Workers' Int'l Ass'n v. NLRB,* 716 F.2d 1249, 1262 (9th Cir.1983) ("Even more suggestive of a retaliatory motive is the fact that the Union sought $30,000 in compensation for unspecified damages...."). In light of all of these reasons, the Board's finding of retaliatory motive is supported by "substantial evidence."

### E. Can a Lawsuit Against a Union Constitute a Violation of Section 8(a)(1)?

■ Diamond contends that, although some lawsuits can constitute unfair labor practices, its suit cannot, because it sued *the Union*, not its employees. Diamond stresses that Section 8(a)(1) provides that "[i]t shall be an unfair labor practice for an employer to interfere with, restrain, or coerce *employees* in the exercise of the rights guaranteed in section 7 [of the Act]." Moreover, Diamond points out, unions generally do not have any Section 7 rights with which it could have interfered.

The Board does not contend that the lawsuit violated the Union's Section 7 rights, but rather maintains that, by suing the Union, Diamond interfered with its employees' exercise of their Section 7 rights. True, section 8(a)(1) prohibits an employer from coercing employees in the exercise of their Section 7 rights. As the Board recognized, however, an employer may coerce employees in the exercise of their Section 7 rights through a variety of means. *See, e.g., Parker–Robb Chevrolet, Inc.,* 262 NLRB 402, 404, 1982 WL 90211 (1982) (discharging supervisors under

---

**3.** Diamond claims that the Union must have been involved because: only the Union could benefit from the boycott; CSEA representatives were seen picketing; the letter was sent to Diamond's customers when only the Union allegedly had access to the customer list. The Board reasoned that CSEA may well have been acting in the

interest of union solidarity and thus been picketing and sending letters on its own initiative. As for the customer list, even if it were assumed that the Union had supplied the customer list, there was no reason to believe that the Union had any connection to the defamatory statement itself.

certain circumstances may interfere with employees' right to exercise their section 7 rights).

While not all suits against unions interfere with the employees' exercise of their Section 7 rights, we agree with the Board that under the circumstances here, Diamond's punitive damages suit against the Union did.[4] Soon after the employees went on strike, Diamond sued the Union seeking $500,000 in punitive damages in retaliation for the employees' exercise of their Section 7 rights. Filing this lawsuit embroiled the Union in a battle with Diamond, drained the Union's resources, and had an inevitable impact on the employees who were exercising their Section 7 right to strike. The Board did not err in concluding that Diamond committed an unfair labor practice by filing the libel suit against the Union. *Cf. Dahl Fish Co.*, 279 NLRB 1084, 1110–11, 1986 WL 53859 (1986), *enf'd mem.* 813 F.2d 1254 (D.C.Cir.1987).

## CONCLUSION

The Board properly applied the law and its factual findings are supported by substantial evidence. We therefore deny Diamond's petition for review and grant the Board's application for enforcement.

**PETITION FOR REVIEW DENIED; BOARD ORDER ENFORCED.**

---

**4.** Diamond wrongly maintains that *Sparks Nugget, Inc. v. NLRB,* 968 F.2d 991 (9th Cir.1992), controls and that we must find that a suit against a union can never constitute a violation of Section 8(a)(1). Because we are holding that the section 7 rights violated were those of the employees, we need not consider the circumstances under which unions themselves can have any derivative section 7 rights.