GESKE & SONS, INC., Petitioner, Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,

and

International Union of Operating Engineers, Local 150, AFL–CIO, Intervenor.

Nos. 95–2213, 95–2358.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 5, 1996.

Decided Jan. 9, 1997.

Michael E. Avakian (argued), The Center on National Labor Policy, Inc., North Springfield, VA, Gerard C. Smetana, (argued), Law Offices of Gerard C. Smetana, Chicago, IL, for Geske & Sons, Incorporated.

Richard A. Cohen (argued), National Labor Relations Board, Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, National Labor Relations Board, Region 13, Chicago, IL, Aileen A. Armstrong, National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Stephen S. Shostrom, Judith T. Poltz, National Labor Relations Board, Region 33, Peoria,

IL, for National Labor Relations Board in No. 95–2213.

Louis E. Sigman (argued), Dale D. Pierson, Pasquale A. Fioretto, Brian C. Hlavin, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for International Union of Operating Engineers, Local 150, AFL–CIO.

Richard A. Cohen (argued), National Labor Relations Board, Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, National Labor Relations Board, Region 13, Chicago, IL, Aileen A. Armstrong, National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Glenn A. Zipp, Stephen S. Shostrom, National Labor Relations Board, Region 33, Peoria, IL, for National Labor Relations Board in No. 95–2358.

Before BAUER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

This dispute between Geske and Sons, Inc. ("Geske" or "the Company") and Local 150 of the International Union of Operating Engineers, AFL–CIO ("Local 150" or "the Union") has spawned litigation before the Illinois state courts, the National Labor Relations Board and the federal district court. In this case and a companion case, *Zipp v. Geske & Sons, Inc.*, 103 F.3d 1379 (7th Cir. 1997), issued at the same time as this case, we resolve this dispute.

In the present case, the National Labor Relations Board ("NLRB" or "Board") determined that Geske had violated the National Labor Relations Act ("NLRA" or "Act") by filing and prosecuting a baseless lawsuit in state court against Local 150. The NLRB therefore ordered Geske to dismiss that suit and to reimburse the defendants for their expenses incurred in defending against the suit. Geske now challenges the Board's order and asks us to deny enforcement; the NLRB asks that we grant enforcement of their order. Because the Board correctly exercised its authority under the NLRA by ordering Geske to dismiss its state lawsuit, we grant enforcement of its order.

# I

## BACKGROUND

### A. *Local 150 Pickets Geske for Recognition*

Geske manufactures asphalt; it is the only non-unionized asphalt manufacturer in the Chicago area. Local 150 is a union that represents operators in the construction industry.

From August 19 to September 18, 1991, Local 150—assisted on occasion by members or representatives of other unions—picketed Geske. It sought recognition as the union representing Geske's operator employees. Local 150 did not file a petition for an election for recognition as the employees' representative union. Section 8(b)(7)(C) of the Act, 29 U.S.C. § 158(b)(7)(C), implicitly permits recognitional pickets for "a reasonable period of time not to exceed thirty days" even in situations in which a union has not filed a petition for an election. *NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,* 434 U.S. 335, 338, 98 S.Ct. 651, 654, 54 L.Ed.2d 586 (1978); *Kobell v. United Food & Commercial Workers Int'l Union, Local 23,* 788 F.2d 189, 194 (3d Cir.1986).

During the picketing, Local 150 displayed signs reading:

I.U.O.E. LOCAL 150

ON STRIKE

AGAINST

GESKE

FOR RECOGNITION AS MAJORITY BARGAINING

REPRESENTATIVE

OF COMPANY'S OPERATING ENGINEER EMPLOYEES

During the course of the picketing, the Union told customers approaching Geske's plant that the Company was "on strike," that Geske was "closed" or "broke[n] down," that the operators at Geske's plant wanted to be unionized, and that the customers could buy

asphalt at a lower cost from one of Geske's unionized competitors. At times, Local 150 parked near Geske's plant an automobile with license plates that read "SCABBY." The vehicle also had a large inflatable rat on the roof, and bore signs on the sides that read "Local 150 Rat Patrol."

### B. Geske's Lawsuit in State Court

On September 5, 1991, Geske filed a lawsuit in Illinois state court against Local 150 and various other defendants.[1] The suit raised three causes of action: trade libel, tortious interference with contractual relations, and tortious interference with prospective advantage. Geske's trade libel claim alleged that the "on strike" language on the Union's picket signs, in conjunction with similar oral statements made by the picketers to Geske's suppliers and customers, was false and misleading. The other two causes of action related to the Union's attempts to dissuade Geske's suppliers and customers from doing business with Geske.

In its suit, Geske requested injunctive relief and damages. After an *ex parte* hearing on September 5, the day the suit was filed, the Illinois court issued a temporary restraining order that prohibited the Union from blocking the entrance to Geske's plant, from threatening Geske's employees, customers or suppliers, and from publishing false and misleading statements about Geske.

On September 6, the Union removed Geske's suit to federal court. On September 11, however, the district court remanded the case to state court. It held that Geske's three claims were all brought under state common law and that none was preempted by the NLRA. Accordingly, the court concluded, there was no basis for federal jurisdiction.

On September 12, the Illinois trial court began a nine-day hearing on Geske's request for a preliminary injunction. After Geske presented its case-in-chief, the court granted the defendants' motion for a directed finding.[2] The court held that, under the applicable definition of trade libel in Illinois, there was no "reasonable extension" or "reasonable interpretation" of Local 150's "on strike" statements that could be construed as trade libel; the court thus concluded that Geske had a very small likelihood of success on the merits with respect to its libel claim.

The Illinois court further held that Geske had failed to produce any evidence that it suffered tortious interference in the conduct of its business. The court ruled that, although there was evidence that the picketers did interfere to a limited degree with Geske's business and contractual relationships, the evidence indicated that the interference was merely incidental to lawful acts by the Union, and hence, was not tortious. The court therefore concluded that Geske had little likelihood of success on the merits of either of these two remaining claims. Accordingly, the court denied Geske's motion for a preliminary injunction.

Geske then filed an interlocutory appeal of the denial of its motion for a preliminary injunction. The Illinois trial court stayed all further proceedings pending the resolution of Geske's appeal. The Illinois appellate court denied Geske's appeal on September 29, 1992.[3] Geske then filed a petition for leave to appeal to the Supreme Court of Illinois and a petition for a writ of certiorari to the Supreme Court of the United States. Both petitions were denied.[4]

---

1. Geske has amended its state lawsuit four times, variously adding and dismissing numerous defendants. The record does not indicate clearly the identity of the remaining defendants. This ambiguity, however, has no bearing on our resolution of this case.

2. The Illinois Code provides for a motion in a non-jury case to find for the defendant at the close of the plaintiff's evidence. The Code states, in relevant part, "In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor.... If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." 735 Ill. Comp. Stat. 5/2–1110 (West 1996).

3. *Geske & Sons v. International Union Local 150*, 236 Ill.App.3d 1110, 211 Ill.Dec. 428, 655 N.E.2d 331 (1992) (unpublished order).

4. *Geske & Sons, Inc. v. International Union of Operating Eng'rs, Local 150*, 151 Ill.2d 563, 186 Ill.Dec. 380, 616 N.E.2d 333 (1993); *Geske & Sons, Inc. v. International Union of Operating Eng'rs, Local 150*, 510 U.S. 992, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993).

Despite having lost its motion for a preliminary injunction, Geske then sought to continue to prosecute its lawsuit on the merits in state court. The NLRB petitioned the federal district court for an injunction, pursuant to 28 U.S.C. § 160(j), to prohibit Geske from prosecuting its case in state court until the proceedings before the Board were resolved. Geske, in turn, countersued the NLRB. That petition and countersuit are the subject of *Zipp v. Geske*. Geske's state lawsuit has remained stayed pending the resolution of that litigation.

## C. *Proceedings Before the National Labor Relations Board*

Local 150 responded to Geske's state lawsuit by filing an unfair labor practice charge with the NLRB on September 19, 1991.[5] On March 30, the Board's Regional Director, on behalf of the Board's General Counsel, issued an unfair labor practice complaint against Geske, alleging that Geske's filing, maintenance and prosecution of its state lawsuit against Local 150 violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1),[6] because the suit lacked a reasonable basis and was motivated by Geske's retaliatory intent.[7] The second amended version of that complaint

(the version under which the Board ultimately granted relief to Local 150) sought an order that prohibited Geske from further pursuing its state lawsuit and required Geske to reimburse the defendants in that lawsuit for the attorneys' fees and expenses they had incurred defending against that suit. Geske filed its answer to the complaint on May 28.

On December 3 and 4, 1992, an administrative law judge ("ALJ") conducted a hearing on the Board's complaint against Geske. At the hearing, Geske's counsel maintained that, despite having been denied its motion for a preliminary injunction, Geske nonetheless could prevail at trial in state court on the merits of its lawsuit because it had "lots of other evidence" in addition to that which it presented in the preliminary injunction hearing. Geske refused, however, to present this additional evidence to the ALJ.

On February 24, 1994, the ALJ issued her decision. She held that Geske violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), by filing, maintaining and prosecuting a baseless state court lawsuit for retaliatory reasons. In holding that the state lawsuit was baseless, the ALJ stated that she:

rel[ied] mostly on the determination of the state judge who conducted the [prelimi-

---

**5.** The union previously had filed an unfair labor practice charge with the Board on September 9, but it ultimately dropped that charge. The union filed two unfair labor practice charges—Charge Nos. 33–CA–9557–1 and 33–CA–9557–2—on September 19. The union subsequently dropped the first of these charges. It is only the second charge filed on September 19, Charge No. 33–CA–9557–2, with which we are concerned in this appeal. On March 24, 1992, Local 150 amended Charge No. 33–CA–9557–2.

Geske submits that the Board, rather than Local 150, actually filed the amended charge on March 24. According to Geske, under 29 U.S.C. § 160(b), the Board may not solicit or initiate a charge, and so the March 24 charge against Geske should have been dismissed as improperly filed. This contention is devoid of merit. The record clearly indicates that Dale Pierson, an attorney for Local 150, signed under penalty of perjury and filed Charge No. 33–CA–9557–2 on September 19, and that he signed and filed the amended charge on March 24. Moreover, in its "Stipulation of Facts and Tables Indexing Joint Exhibits" filed with the NLRB, Geske stipulated that "On March 24, 1992, Local 150 filed its first amended charge in Case 33–CA–9557–2." Having stipulated to this fact before the Board, Geske may not now contend on appeal that it

was the Board that actually filed the first amended charge.

**6.** Section 8(a)(1), 29 U.S.C. § 158(a)(1), insofar as it is relevant to this case, provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of their rights [to self-organize or to join labor organizations]."

**7.** At the same time, the Regional Director sent letters to the Illinois trial and appellate courts, informing them that it had filed a complaint against Geske based on the company's state lawsuit, and that Geske therefore could not pursue the lawsuit until the NLRB had resolved the complaint. By this time, the parties had already filed briefs in the Illinois appellate court in Geske's interlocutory appeal from the trial court's denial of its motion for a preliminary injunction. The Illinois appellate court solicited position statements from the parties on the propriety of staying its proceedings. The appellate court initially stayed the proceedings, but then lifted the stay to allow oral arguments. As noted previously, the appellate court denied Geske's appeal, and the Illinois Supreme Court and United States Supreme Court denied Geske's petitions for leave to appeal and for a writ of certiorari, respectively.

nary injunction hearing] that Geske had failed to establish [a] likelihood of success on the merits, and on the action of the state appellate and supreme courts in denying Geske's interlocutory appeal.... No reason to discount the state courts' conclusions [was] suggested ... by [her] review of the state court transcript of testimony and the various briefs and other documents which are part of the state court record and the record [in the administrative hearing].

Geske then filed exceptions to the ALJ's rulings. After considering Geske's exceptions and briefs from the parties, the NLRB, acting through a three-member panel, agreed with the ALJ that Geske had violated the NLRA by filing and prosecuting its state lawsuit against Local 150 and the other defendants. The Board agreed that the lawsuit lacked a reasonable basis and that Geske filed it with retaliatory intent. Geske then petitioned this court for review of the Board's order, and the Board cross-petitioned for enforcement of its order. Finally, Local 150 moved for and was granted permission to intervene.

## II

## DISCUSSION

A. *The NLRB's Injunction of Geske's State Lawsuit*

Geske's primary claim on appeal is that the Board exceeded its authority under the NLRA and violated Geske's First Amendment right to petition the courts for redress of grievances when it enjoined Geske from prosecuting its lawsuit in state court.[8] We analyze this claim under the standards set forth in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

### 1.

In *Bill Johnson's*, the petitioner filed a state lawsuit against several current and former waitresses who had picketed its restaurant and filed unfair labor practice charges against it with the NLRB; the suit "alleged that the defendants had engaged in mass picketing, harassed customers, blocked public ingress to and egress from the restaurant, and created a threat to public safety. The complaint also contained a libel count...." *Id.* at 734, 103 S.Ct. at 2165. It sought temporary and permanent injunctive relief and damages. After a preliminary hearing, the state court denied preliminary injunctive relief to the restaurant.

In response to the restaurant's state tort suit, the waitresses filed a charge with the NLRB. They alleged that the suit was an attempt to retaliate against them, in violation of section 8(a)(1), (4) of the Act, 29 U.S.C. § 158(a)(1), (4). After an administrative hearing, an ALJ concluded that the restau-

8. Geske claims on appeal that Local 150's March 24 charge, upon which the General Counsel issued its complaint in this case, was filed outside the six-month statute of limitations established by section 10(b) of the Act, 29 U.S.C. § 160(b). Geske submits that the March 24, 1992 charge challenges its September 5, 1991 filing of its state lawsuit, and that Local 150 therefore filed the charge more than six months after the allegedly unfair labor practice. Geske further submits that, notwithstanding the "First Amended" caption on the March 24 charge, that charge did not challenge the same act or occurrence as the September 19 charge, and thus the March 24 charge did not relate back to the date of the original filing. The ALJ, whose determination was adopted by the Board, concluded that this objection was untimely and, in any event, meritless.

We shall not consider Geske's statute of limitations defense. The six-month statute of limitations in section 10(b) is an affirmative defense, rather than a jurisdictional limitation. *NLRB v. Wizard Method, Inc.*, 897 F.2d 1233, 1236 (2d Cir.1990). Geske waived that defense by failing to raise it either in its answer to the General Counsel's complaint or at the administrative hearing before the ALJ. *Id.* Thus, Geske may not now raise this defense in this petition for review. In its Reply Brief, Geske cites *Davis Supermarkets, Inc. v. NLRB*, 2 F.3d 1162 (D.C.Cir.1993), *cert. denied*, 511 U.S. 1003, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994), in support of its claim that it has not waived its statute of limitations defense. *Davis Supermarkets* is inapposite, however. That case dealt only with the question whether the petitioner had preserved a claim for appellate review under 29 U.S.C. § 160(e) by adequately excepting to the ALJ's findings before the Board. *Id.* at 1174. This case, in contrast, deals with whether Geske adequately raised an affirmative defense under § 160(b) before the ALJ.

rant had committed an unfair labor practice by filing a state lawsuit that "lacked a reasonable basis." *Id.* at 736, 103 S.Ct. at 2166. The Board adopted the ALJ's findings and the court of appeals enforced the Board's order.

On appeal, the Supreme Court considered "whether the Board may issue a cease-and-desist order to halt an allegedly retaliatory lawsuit filed by an employer in a state court." *Id.* at 737, 103 S.Ct. at 2167. Initially, the Court rejected the Board's position that a lawsuit filed for retaliatory reasons is an unfair labor practice, regardless of the underlying merit of the suit. Instead, the Court held that "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [NLRA]." *Id.* at 743, 103 S.Ct. at 2170.

Nonetheless, the Court held that, in appropriate cases, the NLRA authorizes the Board to "order[ ] the cessation of a state-court lawsuit." *Id.* at 744, 103 S.Ct. at 2170. The Court held that lawsuits that lack a "reasonable basis" in law or fact do not enjoy First Amendment protection,[9] nor do they implicate a state's interest "in protecting the health and well-being of its citizens." *Id.* at 743, 103 S.Ct. at 2170 (quoting *Farmer v. United Bhd. of Carpenters, Local 25*, 430 U.S. 290, 303, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338 (1977)). Thus, the Court concluded that "it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by ... the NLRA." *Id.* at 744, 103 S.Ct. at 2170. *Cf. Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 59, 113 S.Ct. 1920, 1927–28, 123 L.Ed.2d 611 (1993) (noting, in a discussion of analogous antitrust principles, that *Bill Johnson's* does

not permit enjoining a lawsuit as an unfair labor practice under the National Labor Relations Act unless that suit is "baseless").

The Court then discussed the standard by which the Board should determine whether a state lawsuit is baseless. Emphasizing that the First Amendment right of access to the courts as well as the state's interest in maintaining domestic peace are at stake, the Justices held that the Act must be construed in a manner that would not permit the Board to "usurp the traditional fact-finding function of the state-court jury or judge," *id.* at 745, 103 S.Ct. at 2171, or "deprive a litigant of his right to have genuine state-law legal questions decided by the state judiciary." *Id.* at 746, 103 S.Ct. at 2172. "[I]f [the] state plaintiff is able to present the Board with evidence that shows his lawsuit raises genuine issues of material fact," *id.* at 745–46, 103 S.Ct. at 2171, or, if his lawsuit raises "genuine state-law legal questions," *id.* at 746, 103 S.Ct. at 2172, the Board may not enjoin the prosecution of the suit, but rather must await the results of the state court adjudication. *Id.* at 749, 103 S.Ct. at 2173. If, on the other hand, there are no genuine factual issues or the plaintiff's state-law claim is "plainly foreclosed as a matter of law or is otherwise frivolous," *id.* at 747, 103 S.Ct. at 2172, the suit is baseless, and the Board may then proceed to determine whether the plaintiff filed it for retaliatory reasons in violation of section 8(a) of the Act, 29 U.S.C. § 158(a). The Court suggested that, "[i]n making reasonable basis determinations, the Board may draw guidance from summary judgment and directed verdict jurisprudence, although it is not bound by either." *Id.* at 746 n. 11, 103 S.Ct. at 2171 n. 11.

### 2.

We now turn to the case before us. As a threshold matter, we note that, as the case

---

9. Geske maintains that only those lawsuits that are "based on intentional falsehoods or on knowingly frivolous claims" lose their First Amendment protection. Petitioner's Br. at 15, 22, 38 (*citing Bill Johnson's*, 461 U.S. at 743, 103 S.Ct. at 2170 (*quoting* Thomas A. Balmer, *Sham Litigation and the Antitrust Laws*, 29 Buff. L.Rev. 39, 60 (1980))). We think this is a misreading of *Bill Johnson's*. The Court lists "intentional falsehoods" and "knowingly frivolous claims" merely as two examples, and not as an exhaustive list, of types of claims that have no protection under the First Amendment. The Court's subsequent discussion makes clear that, for the purpose of enjoining a suit as an unfair labor practice under the NLRA, claims which present no material questions of fact or law have no First Amendment protection.

has been presented to us, only the viability of the state libel claim must be considered. In the "Statement of Issues Presented for Review" in its brief, Geske refers only to its libel claim. Petitioner's Br. at 2. Even a line-by-line search, which we are not obliged to undertake, discloses only two passing references to the tortious interference claims in Geske's brief. Geske presented no explanation of how its tortious interference claims raised any material questions of fact or law.[10] Accordingly, we shall consider only whether the Board erred by requiring that Geske cease and desist from prosecution of its libel claim in state court.

Geske's contention is that the Board erred in determining that its state suit for trade libel was baseless. In the hearing before the ALJ, Geske and the Board agreed that *Vee See Constr. Co. v. Jensen & Halstead, Ltd.*, 79 Ill.App.3d 1084, 35 Ill.Dec. 444, 399 N.E.2d 278 (1979) articulates the correct standard for a claim of trade libel in Illinois.[11] Under *Vee See*, to state a cause of action for libel in situations in which the plaintiff is a corporation, the allegedly libelous statements "must assail the corporation's financial position or business methods, or accuse it of fraud or mismanagement." *Id.* 35 Ill.Dec. at 447, 399 N.E.2d at 281 (citation omitted). In its state tort complaint, Geske alleged that Local 150's use of the term "On Strike" on its picket signs falsely portrayed Geske's financial position by implying that the company was out of business or not a financially viable entity. According to Geske, the term "On Strike" falsely implied that Geske's employees were striking against the company, thus suggesting that it was not able to operate its business because it was involved in a labor dispute with its own employees.

■ We must determine whether, under the standards set forth by the Supreme Court of the United States in *Bill Johnson's*, Geske has stated a well-founded claim for trade libel under Illinois law. We conclude that Geske has not. First, the Union's pickets were not false, and, under Illinois law, only false statements are actionable as libelous. *Pandya v. Hoerchler*, 256 Ill.App.3d 669, 195 Ill.Dec. 576, 628 N.E.2d 1040, 1043 (1993); *Zaret v. Joliet Park Dist.*, 91 Ill. App.3d 225, 47 Ill.Dec. 654, 415 N.E.2d 659, 660 (1980). The pickets clearly stated that Local 150 was on strike "for recognition as [the] majority bargaining representative of [Geske's] operating engineer employees." Local 150 was indeed lawfully picketing for that purpose.

■ Nevertheless, Geske maintains that the phrase "On Strike" is susceptible of only one meaning: that the company's employees were involved in a labor dispute with the

---

10. In comparing an Illinois precedent to its complaint, Geske stated that the case "involved the torts of libel, slander, and business interference, similarly pled by Geske." Petitioner's Br. at 17. Later, Geske stated, "A review of [Geske's] Second Amended Complaint demonstrates that each of the three torts [alleged therein] ha[s] been upheld as non-preempted claims in previous cases." *Id.* at 36. Neither of these references explains what material issues of fact or law Geske's tortious interference claims raised.

11. On appeal, Geske submits that *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129 (1993), establishes the correct standard by which to assess its libel claim. We cannot accept this submission. *Kuwik* articulates the standards for a libel claim in a case in which the plaintiff is an individual. *Vee See*, in contrast, articulates the standards for a cause of action for libel in situations—such as the present case—in which the plaintiff is a corporation. *Vee See*, 35 Ill.Dec. at 447, 399 N.E.2d at 281. Illinois has employed the standard for trade libel articulated in *Vee See* for fifty years.

See *Harris Trust & Sav. Bank v. Phillips*, 154 Ill.App.3d 574, 107 Ill.Dec. 315, 506 N.E.2d 1370, 1373 (1987), *appeal denied*, 116 Ill.2d 554, 113 Ill.Dec. 299, 515 N.E.2d 108 (1987); *American Int'l Hosp. v. Chicago Tribune Co.*, 136 Ill. App.3d 1019, 91 Ill.Dec. 479, 483 N.E.2d 965, 969 (1985); *Audition Div., Ltd. v. Better Bus. Bureau, Inc.*, 120 Ill.App.3d 254, 75 Ill.Dec. 947, 458 N.E.2d 115, 118 (1983); *Garber–Pierre Food Prod., Inc. v. Crooks*, 78 Ill.App.3d 356, 33 Ill. Dec. 878, 397 N.E.2d 211, 214 (1979); *Life Printing & Publ'g Co. v. Field*, 327 Ill.App. 486, 64 N.E.2d 383, 384 (1946); *Life Printing & Publ'g Co. v. Field*, 324 Ill.App. 254, 58 N.E.2d 307, 310 (1944). Geske offers no reason to believe an Illinois court hearing its libel claim would now change the standard applicable in a libel case in which the plaintiff is a corporation. Indeed, the Illinois court that heard Geske's motion for a preliminary injunction relied upon the *Vee See* standard. Accordingly, we shall utilize the *Vee See* standard for determining whether Geske has raised any material questions of fact or law in its claim against Local 150.

company, and therefore refused to work. There are two problems with Geske's position, however. First, under Illinois law, to determine whether a statement is libelous, a court must read the statement as a whole. *Audition Div.*, 75 Ill.Dec. at 951, 458 N.E.2d at 119. Reading the Union's picket signs as a whole, we conclude that there is no reasonable way to interpret the statements as Geske suggests.[12] Second, even reading the "On Strike" statement on the signs by itself, that statement validly conveys the lawful recognitional objective of the picket. *See, e.g., Retail Clerks' Int'l Union & Retail Store Employees' Union, Local 655 v. Quick Shop Mkts., Inc.*, 604 F.2d 581, 586 (8th Cir.1979) (picket signs stating "Employees on Strike" demonstrates a recognitional objective); *United Union of Roofers, Local Union No. 2*, 296 N.L.R.B. 585, 589, 1989 WL 224352 (1989) ("[T]he use of 'on strike' signs has ... been found to be evidence of a recognitional or organizational objective."); *United Bhd. of Carpenters, Local 1849*, 208 N.L.R.B. 461, 462, 1974 WL 4695 (1974); *Hotel, Motel & Club Employees' Union, Local 568*, 147 N.L.R.B. 1060, 1068 (1964); *Hoisting & Portable Eng'rs Local Union 101*, 140 N.L.R.B. 1175, 1187 (1963).[13] Thus, we conclude that Local 150's picket signs were not false, and accordingly, that Geske did not

state a well-founded claim for trade libel in its state lawsuit.

Moreover, even if Local 150's picket signs did falsely imply that Geske's workers were striking, those signs were not defamatory under the *Vee See* standard. There is nothing about a company's employees being on strike that suggests that the company has engaged in fraud or mismanagement or that necessarily assails the company's financial position or business methods; even the best managed and most financially sound companies may experience labor strikes. Once again, we conclude that Geske failed to state a well-founded trade libel claim in its state lawsuit.

### 3.

■ The second element of the *Bill Johnson's* test requires the Board to determine whether Geske filed its suit against Local 150 for retaliatory reasons. The Board's determination of Geske's motive in filing suit is a factual determination, to which we defer as long as it is supported by substantial evidence in the record. *NLRB v. International Union of Operating Eng'rs, Local 520*, 15 F.3d 677, 679 (7th Cir.1994). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91

---

12. Illinois law also allows a cause of action for libel per quod—a publication not libelous on its face, but rendered defamatory by extrinsic facts or innuendo. *Audition Div.*, 75 Ill.Dec. at 951, 458 N.E.2d at 119. Geske does not advance this theory before us, and therefore we need not consider it. Moreover, Geske has failed to allege in this case any additional facts that might support a claim of libel per quod under Illinois law.

13. Geske submits that *United Bhd. of Carpenters* and *Hotel, Motel & Club Employees' Union* actually support its position. We cannot agree with Geske's interpretation of these cases.

In *United Bhd. of Carpenters*, "[t]he ultimate question presented [was] whether [the union,] in picketing [the employer] with a recognitional object[,] ... violated Section 8(b)(7)(C) of the Act [by picketing for more than thirty days without filing a petition for an election].... Also presented [was] the question of whether the publicity proviso in Section 8(b)(7)(C) [allowing picketing for non-recognitional purposes for more than thirty days] immunized the picketing from ille-

gality." 208 N.L.R.B. at 464. The Board ruled that the term "Strike" on the union's picket signs indicated that the signs were intended for recognitional purposes, rather than for publicity purposes. *Id.* at 462. The Board did not hold, however, that the use of the word "strike" indicated that a company's own employees were on strike, rather than indicating a recognitional picket by a union.

Similarly, in *Hotel, Motel & Club Employees' Union*, the union claimed that its picket, which lasted for more than thirty days, was only to advise the public that the employer operated a nonunion establishment, rather than for recognition as the representative of the company's employees. 147 N.L.R.B. at 1062. The union displayed picket signs containing the phrase "On Strike." *Id.* at 1065. The Board found that "an object of the union's picketing ... was ... to obtain recognition from [the employer], within the meaning of Section 8(b)(7)." *Id.* at 1068. Again, there was no suggestion in the Board's opinion that the use of the term "On Strike" signaled a strike by employees rather than a recognitional picket by a union.

S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted); *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.1995).

■ The ALJ stated numerous factors based upon which she concluded that Geske filed suit for retaliatory reasons.[14] Geske challenges whether this evidence is sufficient to support the Board's determination that the Company maintained the state court action for retaliatory reasons. This claim is completely devoid of merit. The evidence relied upon by the ALJ is ample to support her conclusion that Geske filed its state suit for retaliatory reasons. Motive or intent almost always must be inferred from circumstantial evidence. As long as the Board's determination is premised on substantial evidence, its conclusion is both valid and binding on this court. This principle must govern even when, in reaching a decision, the ALJ discredited substantial evidence favorable to the other party. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc); *see also Diaz,* 55 F.3d at 305–06. It is the duty and the prerogative of the ALJ to choose between conflicting evidentiary submissions. As long as the ALJ's decision is supported by substantial evidence, we cannot take the contrary view even though there is other evidence in the record that would support such a view.

### 4.

Geske offers a number of responses to the Board's conclusion that its libel suit against Local 150 was baseless. None of these responses is availing.

First, Geske repeatedly invokes its First Amendment right to seek redress of grievances in state courts. As the Supreme Court held in *Bill Johnson's,* however, the First Amendment protects only well-founded lawsuits. Because Geske's suit is baseless, Geske has no right under the First Amendment either to file or to prosecute that suit.

Second, Geske repeatedly maintains that the NLRA does not preempt state libel actions in the context of labor disputes. *See Linn v. United Plant Guard Workers, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (holding that malicious libel is not preempted). Neither the NLRB nor the Union contends to the contrary. Their sole submission is that this suit is baseless and retaliatory and therefore an unfair labor practice. It is the bringing of a baseless state action that constitutes the unfair labor practice.

Third, Geske claims that, because it has had only a hearing on its motion for a preliminary injunction in state court and not a trial on the merits of its case, its lawsuit is still pending in state court. According to Geske, the NLRB was therefore without authority to enjoin the prosecution of that suit. As our earlier discussion of *Bill Johnson's* notes, although the Board must act with great circumspection in this area because important individual rights and state prerogatives are at stake, the Board need not allow a baseless state action that is retaliatory in character to continue to interfere with the course of labor-management relations. Rather, *Bill Johnson's* holds that "it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with [a retaliatory motive]." 461 U.S. at 744, 103 S.Ct. at 2170. Our examination of the

14. The ALJ recites the following factors as supporting her conclusion: The subject matter of Geske's suit consisted largely of lawful organizational picketing protected by the NLRA. Geske officers or agents falsely told Local 150 picketers that the temporary restraining order Geske had obtained required the Union to remove all picket signs. Geske officers or agents falsely told a union member at one of Geske's suppliers that the temporary restraining order required him to load supplies onto a Geske truck after he chose to honor Local 150's picket. Geske filed a motion to amend the temporary restraining order to ban all picketing of Geske facilities or trucks, although there was no legal basis for such an injunction. Soon after the picketing began, Geske's General Manager told one of Local 150's business agents that he had no right to be there and to "get out of here." Geske's General Manager demanded that a Local 150 business agent tell her whether any Geske employee had signed anything from the union; she instructed Geske employees not to talk to any of the picketers or to sign anything, and interrogated employees concerning their discussions with the union representatives. Finally, during a meeting between Geske and Local 150 representatives, one of Geske's representatives stated that the company knew the identities of the employees who had supported the Union's efforts and that those individuals would "get theirs."

decisions of the state trial and appellate courts makes clear that the state courts considered the trade libel allegation of Geske to be, on the evidence submitted by Geske, without foundation. As we have noted earlier, Geske never informed the Board, in concrete terms, of any additional evidence that it had to offer.

Fourth, Geske submits that its lawsuit was not baseless because it was validly premised upon the precedent established in *Lowe Excavating Co. v. International Union of Operating Eng'rs Local No. 150*, 180 Ill.App.3d 39, 129 Ill.Dec. 300, 535 N.E.2d 1065, *appeal denied*, 126 Ill.2d 560, 133 Ill.Dec. 669, 541 N.E.2d 1107, *cert. denied*, 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989). According to Geske, *Lowe* creates a separate trade libel standard in Illinois for allegedly libelous statements uttered in the context of a labor dispute. This contention, however, rests upon a misunderstanding of that case. In *Lowe*, "[t]he sole issue on appeal [was] whether the [NLRA] deprives a State court of jurisdiction to enjoin a union from picketing with placards that contain knowingly false statements, or statements made in reckless disregard for the truth." *Id.* 129 Ill.Dec. at 303, 535 N.E.2d at 1068. Thus, *Lowe* did not establish a standard for causes of action for trade libel in labor disputes.[15]

Fifth, Geske suggests that the Board erred by requiring it to produce at the administrative hearing all the evidence it intended to introduce in the state court trial on its lawsuit. According to Geske, the Board thereby erroneously conducted a "virtual trial on the merits," which *Bill Johnson's* prohibits. We cannot agree with Geske's characterization of the situation. In order to carry out its mandate under *Bill Johnson's* to determine whether a lawsuit is baseless, the Board must examine the plaintiff's evidence to determine whether it raises any material questions of fact. In this case, the Board examined all the evidence Geske produced at the

hearing on its motion for a preliminary injunction and correctly concluded that the evidence raised no material question of fact. Geske asserted that it had "lots of other evidence" to support its suit, but refused to produce that evidence. When Geske elected not to produce any other evidence in support of its case, the Board correctly ruled, based on the evidence before it, that Geske's suit was baseless. Just as a party in a federal civil case may not avoid summary judgment simply by asserting that he has additional evidence he will produce at trial, Fed. R.Civ.P. 56(e), we do not think a respondent before the NLRB can avoid having his state lawsuit enjoined merely by asserting that he has additional, undisclosed evidence that renders his suit well-founded.

■ Sixth, Geske asserts that the Board erred by concluding that its lawsuit was baseless before it had the opportunity to conduct any discovery. However, Geske never made any attempt, by affidavit or otherwise, to state what evidence it expected to obtain through discovery or why it could not yet produce that evidence. One of the reasons the Court held that the NLRB may enjoin baseless lawsuits is that such suits "may be used by an employer as a powerful instrument of coercion or retaliation." *Bill Johnson's*, 461 U.S. at 740, 103 S.Ct. at 2168. The Board's authority to deal with unfair labor practices would be significantly impeded were we to hold that it could not require the cessation of a baseless lawsuit until after the often lengthy and expensive process of discovery. Accordingly, we hold that in cases, such as the present one, in which the plaintiff in a state lawsuit provides no evidentiary basis for that suit and fails to describe what evidence he expects to obtain through discovery and to explain why he has not been able to obtain that evidence, the Board properly may enjoin the prosecution of that suit prior to discovery.

---

15. *Lowe* did discuss, in dicta, the standards for a claim of trade libel. But even in that discussion, *Lowe* stated that "[w]hile truth or falsity is an important element in the tort of trade libel, it is certainly not the only issue to be considered. The issue[ ] of injury to reputation ... must also be considered." *Id.* 129 Ill.Dec. at 306, 535 N.E.2d at 1071. The element "injury to reputa-

tion" is an obvious reference to the *Vee See* standards impugning a corporation's financial position or business practices. Thus, *Lowe* clearly does not support Geske's claim that, to state a claim for trade libel in the context of a labor dispute, it need prove only that Local 150 made false statements with knowledge of their falsity or reckless disregard for their truth.

Finally, Geske maintains that the Board improperly found that it had violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). That section makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of their rights guaranteed in [section 7 of the Act]." Section 7, 29 U.S.C. § 157, guarantees employees the right to form, join and assist unions and to bargain collectively. Geske submits that unions have no rights under section 7, and because it sued Local 150 rather than its employees, it did not violate its employees' rights under section 7. Accordingly, Geske concludes, it did not commit an unfair labor practice under section 8(a)(1).

We cannot accept Geske's contention. It is true that "[b]y its plain terms, ... the NLRA confers rights only on employees, not on unions or their nonemployee organizers." *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 532, 112 S.Ct. 841, 845, 117 L.Ed.2d 79 (1992). Nevertheless, "the right to organize is at the very core of the purpose for which the NLRA was enacted," *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 207 n. 42, 98 S.Ct. 1745, 1762 n. 42, 56 L.Ed.2d 209 (1978). Because employees' "right of self-organization depends in some measure on their ability to learn the advantages of self-organization from others," *Lechmere, Inc.,* 502 U.S. at 532, 112 S.Ct. at 845 (*quoting NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 113, 76 S.Ct. 679, 684–85, 100 L.Ed. 975 (1956) (internal punctuation omitted)), the Court has held that unions possess "derivative rights," *Sears,* 436 U.S. at 207 n. 42, 98 S.Ct. at 1762 n. 42, under section 7 to engage in organizational activities in order to protect the employees' right to organize. *See NLRB v. Great Scot, Inc.,* 39 F.3d 678, 682 (6th Cir. 1994) (same). Thus, Geske violated its employees' section 7 rights to organize by filing a baseless lawsuit against Local 150 in response to the Union's lawful organizational picketing. *See Diamond Walnut Growers, Inc. v. NLRB,* 53 F.3d 1085, 1089–90 & n. 4 (9th Cir.1995) (baseless libel suit against union may be an unfair labor practice that interferes with employees' rights under section 157).

Geske suggests that, because *Bill Johnson's* refers only to baseless lawsuits brought by employers against employees, the Supreme Court meant, by negative implication, to exclude from the scope of section 8(a)(1) baseless lawsuits against unions. We believe, however, that by referring only to baseless lawsuits against employees, the Supreme Court simply addressed the case before it. Cases subsequent to *Bill Johnson's* have applied the holding and reasoning of that case in a variety of labor contexts, regardless of whether the plaintiff was an employer or the defendant was an employee. *See NLRB v. International Union of Operating Eng'rs, Local 520,* 15 F.3d 677 (7th Cir. 1994) (*Bill Johnson's* analysis applied to suit by union against union member); *Diamond Walnut Growers,* 53 F.3d at 1087–90 (*Bill Johnson's* analysis applied to suit by employer against union); *Gibson Greetings, Inc. v. NLRB,* 53 F.3d 385, 394 (D.C.Cir.1995) (same in dicta); *Hoeber v. Local 30, United Slate, Tile & Composition Roofers,* 939 F.2d 118, 126 (3d Cir.1991) (*Bill Johnson's* analysis applied to suit by union against employer). Notably, Geske invites our attention to no case in which *Bill Johnson's* was limited to suits brought by employers against employees.

Because nothing in the language or reasoning of *Bill Johnson's* supports Geske's position and because the courts of appeals have consistently taken the contrary position, there is no reason for us to accept the reading urged on us by Geske. It would be anomalous to hold that an employer may not interfere with its employees' right to organize by filing baseless lawsuits against them, but that it may achieve the same result by filing a baseless lawsuit against a union attempting to organize the employees.

■ Thus, we cannot accept Geske's responses. We hold that the NLRB correctly determined that Geske committed an unfair labor practice, in violation of section 8(a)(1) of the Act, by filing a baseless lawsuit against Local 150 in retaliation for the Union's lawful recognitional picketing of Geske's business.

## B. *Attorneys' Fees*

Geske next submits that the Board erred by ordering it to reimburse Local 150 and the other defendants named in Geske's state suit for the legal expenses they incurred in defense of that litigation. Having determined that the Board correctly found that Geske committed an unfair labor practice by filing its state lawsuit, our review of its remedial order is extremely limited. Section 10(c) of the Act, 29 U.S.C. § 160(c), grants the NLRB the authority to devise remedies for unfair labor practices to effectuate the policies underlying the NLRA.

■ The Board's power [to devise remedies under § 10(c) ] is a broad discretionary one, subject to limited judicial review. The relation of remedy to policy is peculiarly a matter for administrative competence. In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience. The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.

*Fibreboard Paper Prods. Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 405–06, 13 L.Ed.2d 233 (1964) (citations and internal punctuation omitted); *see also Rock–Tenn Co. v. NLRB,* 69 F.3d 803, 810 (7th Cir.1995). Geske has not made such a showing in this case.

We need not dwell at length on Geske's assertion that its state lawsuit was neither baseless nor retaliatory. We have already discussed these matters at length and concluded that the Board's determination to the contrary is well supported by the record.

■ Geske next asserts that, because *Bill Johnson's* refers to reimbursement of "employees" whom the employer has wrongfully sued, 461 U.S. at 747, 103 S.Ct. at 2172, the Board has no authority under *Bill Johnson's* to order reimbursement in this case to Local 150. Again, we decline to draw such a categorical inference by negative implication. As our colleagues in the District of Columbia Circuit noted in *Gibson Greetings, Inc. v. NLRB,* 53 F.3d 385, 394 (D.C.Cir.1995), *Bill Johnson's* does permit the Board to award costs that a union incurs in defending against a baseless, retaliatory lawsuit that is found to be an unfair labor practice. The Ninth Circuit, recognizing that baseless litigation against a union can have an impact on the rights of the employees, has also enforced orders of the Board that required that the union be recompensed for its expenses in defending against the suit. *See Diamond Walnut Growers,* 53 F.3d at 1089–90.[16] Sitting en banc, we already have noted that the Board may award attorneys' fees to unions when they are subjected to patently frivolous litigation before the Board in the course of an unfair labor practice proceeding. *U.S. Marine Corp. v. NLRB,* 944 F.2d 1305, 1325–27 (7th Cir.1991) (en banc), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1474, 117 L.Ed.2d 618 (1992). That situation is highly analogous to the situation before us today. Whether a union is subjected to frivolous litigation as part of the underlying unfair labor practice or during the adjudication of another unfair labor practice allegation, there can be a simi-

---

**16.** It does not appear that the propriety of the Board's ordering such reimbursement was squarely placed before the court of appeals in *Diamond Walnut Growers.* We are aware of the Sixth Circuit's decision in *Johnson & Hardin Co. v. NLRB,* 49 F.3d 237 (6th Cir.1995). We do not believe that the case is necessarily at odds with the view of the District of Columbia Circuit in *Gibson Greetings, Inc. v. NLRB,* 53 F.3d 385 (D.C.Cir.1995). The court's treatment of the subject is brief, and it appears that the court's chief concern was that the Board had not adequately justified the award of fees to the non-employee union members. We find it difficult to read the court's holding as establishing a categorical rule that would preclude such an award in all circumstances. Certainly, we would expect that such a significant restriction on the power of the Board to fashion appropriate relief would have received a far more plenary treatment.

As we already have made clear, we do not think *Bill Johnson's* can be read to distinguish between employees and nonemployee union organizers insofar as the protections against baseless lawsuits or the remedies available under the Act are concerned. When the baseless and retaliatory litigation against the Union impacts on the statutory protections afforded employees under the Act, the Board has the authority to consider the reimbursement of the Union's litigation expenses as part of the remedy necessary to effectuate the policies of the Act.

lar impact on the rights of the workers under the Act.

On the record in this case, we believe that the Board's inclusion of this remedy in its order effectuates the policies underlying the NLRA. The injured party, the Union that plays a necessary part in the organizational activities of the employees, is compensated for expenses that it would not have incurred in the absence of the baseless state law suit. An adequate deterrent to unlawful attempts by employers to hinder organizational attempts by unions is provided. A baseless and retaliatory lawsuit against a union can be a powerful weapon in the hands of an unprincipled employer. Such an employer need not win its lawsuit against a union to thwart the Union's attempts to organize workers; rather, the employer need only impose substantial costs and delays upon the Union. The Board's remedies in the face of such a potential abuse must include an economic disincentive for engaging in such conduct. Accordingly, we hold that, on this record, the Board's order directing Geske to reimburse Local 150 and the other defendants for their legal costs incurred in defending against Geske's lawsuits was both within the Board's authority under section 10(c) and effectuates the policies underlying the Act.

### Conclusion

The NLRB correctly held that, under the Illinois standard for trade libel, Geske's state lawsuit against Local 150 and the other defendants was clearly baseless. Moreover, the Board's determination that Geske filed the lawsuit for retaliatory reasons is supported by substantial evidence in the record. Accordingly, the Board properly enjoined the further prosecution of that lawsuit in state court and correctly ordered Geske to reimburse the defendants for the expenses they incurred in defending against that suit. Geske's petition for review is therefore denied, and the Board's cross-application for enforcement of its order is granted.

ENFORCEMENT GRANTED; REVIEW DENIED.