**USS–POSCO INDUSTRIES and BE & K Construction Company, Plaintiffs,**

**v.**

**CONTRA COSTA COUNTY BUILDING & CONSTRUCTION TRADES COUNCIL, AFL–CIO; Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders, Local 34, of the United Brotherhood of Carpenters & Joiners of America, AFL–CIO; Bay Counties District Council of Carpenters, AFL–CIO; Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL–CIO; Iron Workers Local 378 of the International Association of Bridge, Structural & Ornamental Iron Workers, AFL–CIO; District Council of Iron Workers of the State of California & Vicinity, AFL–CIO; Plasterers & Cement Masons Local 825 of the Operative Plasterers & Cement Masons International Association, AFL–CIO; District Council of Plasterers & Cement Masons of Northern California, AFL–CIO; Northern California District Council of Laborers, AFL–CIO; International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local No. 549, AFL–CIO; Steamfitters Local Union No. 342 of the United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States & Canada, AFL–CIO; and International Brotherhood of Electrical Workers, Local 302, AFL–CIO, Defendants.**

**No. C–87–4829 DLJ.**

United States District Court,
N.D. California.

July 29, 1988.

Richard A. Leasia, David J. Murphy and Dennis M. Brown of Littler, Mendelson, Fastiff & Tichy, San Jose, Cal., for plaintiffs.

Peter P. Nussbaum and Victoria Chin, of Neyhart, Anderson, Nussbaum, Reilly & Freitas, San Francisco, Cal., for defendants Intern. Broth. of Elec. Workers Local 302 and Steamfitters Local 342.

Victor J. Van Bourg of Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

JENSEN, District Judge.

Defendants' motions to dismiss or for partial summary judgment came on for hearing on June 1, 1988. Defendants International Brotherhood of Electrical Workers (IBEW) Local 302 and Steamfitters Local 342 appeared through counsel Peter P. Nussbaum. Remaining defendants appeared through counsel Victor J. Van Bourg. Plaintiffs appeared though counsel Richard A. Leasia. The Court has considered the memoranda and documents submitted, as well as the oral arguments of counsel and now ORDERS as follows:

1. The defendants' motions for partial summary judgment as to the plaintiffs' first and fourth claims for relief are GRANTED;

2. The defendants' motion for summary judgment as to the plaintiffs' third claim for relief is DENIED without prejudice and may be refiled on November 9, 1988;

3. Defendants IBEW Local 302 and Steamfitters Local 342's motion for a protective order prohibiting discovery in this matter is DENIED without prejudice; and

4. Defendants' motion for sanctions is DENIED without prejudice.

### I.

This lawsuit raises the issue of the scope of permissible activities through which labor unions may attempt to influence hiring and contracting decisions by employers.

Plaintiff USS–POSCO Industries (UPI) is a California general partnership formed by

USX Corporation (formerly US Steel) and Pohang Iron and Steel Company, a South Korean concern. The purpose of the partnership is to modernize and operate an outdated steel facility in Pittsburg, California. Plaintiff BE & K Construction Company (BE & K) is a non-union contractor to which UPI awarded a construction contract to modernize the facility. There are 12 defendants. Seven are locals of various unions associated with the AFL–CIO, and five are associations of labor unions.

Plaintiff UPI plans a multimillion dollar modernization project for the Pittsburg facility (the Project). After plaintiff BE & K was awarded the primary contract, defendants allegedly attempted to coerce plaintiff UPI to enter into illegal "hot cargo" agreements prohibited by Section 8(e) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(e), and to force plaintiffs UPI and BE & K and other entities, by secondary boycott, to cease doing business with each other, and/or recognize the defendant labor organizations as the representatives of plaintiffs' employees, even though defendants had not been certified as representatives under 29 U.S.C. § 159. Plaintiffs allege that such acts constitute unfair labor practices under Sections 8(b)(4)(ii)(A) and (B) of the NLRA, 29 U.S.C. §§ 158(b)(4)(ii)(A) and (B).

Defendants allegedly effected this illegal coercion by four methods: (1) advocating the adoption and enforcement of a toxic waste ordinance in Contra Costa County which would impede the Project's progress; (2) picketing and handbilling at plaintiffs' premises; (3) filing a lawsuit in state court alleging, among other things, violations of California's Health and Safety Code; and (4) initiating collective bargaining grievance proceedings against Eichleay Constructors, Inc. (ECI), a partner in a joint venture with plaintiff BE & K to perform the Project contract.

Defendants' motions challenge the first, third, and fourth claims. Defendants argue that the activities challenged in the first and third claims (legislative lobbying and filing lawsuits, respectively) are protected by the First Amendment. Regarding the fourth claim, initiation of grievance proceedings, defendants argue that because contractual grievance and arbitration proceedings are the preferred method of resolving labor disputes under federal labor policy, resort to those processes cannot create liability for unfair labor practices.

## II.

As to legislative lobbying and the filing of lawsuits, defendants assert that these activities fall under the First Amendment right to petition, and that the *Noerr–Pennington* doctrine provides immunity for such activities. The *Noerr–Pennington* doctrine arose in the antitrust context. The doctrine basically provides antitrust immunity for certain petitioning activities, even if done for the purpose of restraining trade. Defendants argue that the rationale behind *Noerr–Pennington* should apply to the instant case, and that defendants' petitioning activities, protected under the First Amendment, are immune from liability under federal labor laws.

### A. The *Noerr–Pennington* Doctrine

In *Eastern Railroad Presidents Conference, et al. v. Noerr Motor Freight, Inc., et al.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court held that the Sherman Act did not bar an association of railroad companies from banding together to influence legislation destructive of the trucking industry. The unanimous opinion of the Court purported only to interpret the antitrust laws. In doing so, the Court considered several factors. First, the Court reasoned that representative democracy depends on "the ability of the people to make their wishes known to their representatives." *Id.* at 137, 81 S.Ct. at 529. The Sherman Act was not intended to regulate this type of political activity, but only business activity. Second, interpreting the Sherman Act to bar the railroads' lobbying activities would "raise important constitutional questions." *Id.* at 138, 81 S.Ct. at 530. The Court concluded that the railroads' activities were not prohibited under the Sherman Act.

In *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Court broadened the *Noerr* holding to encompass the petitioning of other public officials besides legislators. *Pennington* also emphasized the irrelevance of the petitioner's underlying purpose. "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *Id.* at 670, 85 S.Ct. at 1593.

Despite this language, *Noerr–Pennington* does not shield all petitioning activity from antitrust liability. The *Noerr* Court recognized a "sham" exception: if petitioning activity, "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," Sherman Act liability is justified. *Noerr* 365 U.S. at 144, 81 S.Ct. at 533. However, it is not a sham if the activity is "a genuine effort to influence legislation and law enforcement practices." *Id.*

The concept of the sham exception was further refined in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In that case, defendants allegedly conspired to monopolize trade and commerce in the transportation of goods by instituting administrative and judicial proceedings "to resist and defeat [plaintiffs'] applications ... to acquire operating rights or to transfer or register those rights." The Court, recognizing the applicability of *Noerr* to petitioning in the courts, distinguished administrative and adjudicatory fora from the legislative lobbying at issue in *Noerr.* Noting that certain types of unethical conduct, "condoned in the political arena," were sanctionable in the adjudicatory context, the Court implied that the scope of protected petitioning activity was narrower in adjudicatory fora than for legislative lobbying. *Trucking Unlimited* at 513, 92 S.Ct. at 613. The Court held that institution of baseless, repetitive claims, in order to effectively bar competitors from meaningful access to administrative agencies and the courts, was not "political expression" entitled to First Amendment protec-

tion. Such activity fell within *Noerr*'s sham exception, "as adapted to the adjudicatory process." *Trucking Unlimited* at 516, 92 S.Ct. at 614.

The *Noerr–Pennington* rationale was adapted to the labor context in *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), where the Court was presented with an alleged unfair labor practice in the form of a state lawsuit. An employer allegedly filed the state suit solely for the purpose of retaliating against an employee for exercising federally protected labor rights. The Court recognized that under a literal reading of the statutory language, the lawsuit would probably constitute an unfair labor practice. However, the Court acknowledged the First Amendment values underlying the *Noerr–Pennington* doctrine and their applicability in interpreting the unfair labor practice provisions in the NLRA. The Court also noted "the States' compelling interest in the maintenance of domestic peace." Barring a well-founded state lawsuit as an unfair labor practice would infringe on a state's interest in providing judicial remedies for its citizens. Based upon these First Amendment and federalism concerns, the Court held that a well-founded lawsuit, even if brought for an improper purpose under the NLRA, was not an unfair labor practice under that statute.

### B. *Defendants' Petitioning Activities*
#### 1. *Legislative Lobbying*

◾ The complaint alleges that defendants, in order to coerce plaintiffs unfairly, advocated passage of a local toxic waste ordinance which would prevent or impede plaintiffs' modernization project. After passage of the ordinance, defendants allegedly lobbied for its enforcement against plaintiffs.

The lobbying of state and local legislative bodies implicates the same First Amendment and federalism concerns at issue in *Bill Johnson's Restaurants.* The right to petition a legislative body falls squarely under the "umbrella of 'political

expression'." *See Trucking Unlimited* 404 U.S. at 512–513, 92 S.Ct. at 613. As for federalism concerns, this Court will not lightly infer a Congressional intent to "ignore the substantial state interest in protecting the health and well-being of its citizens," *Bill Johnson's Restaurants* 461 U.S. at 742, 103 S.Ct. at 2169 (citations omitted). Such an interest is clearly at stake when a toxic waste law is under consideration by a local legislative body. That an improper motive may have spurred defendants' lobbying efforts does not bring that petitioning activity within the ambit of federal proscriptions against unfair labor practices.

The complaint alleges nothing unlawful or improper about defendants' lobbying activities, except that such activity was coercive under the NLRA. There is no allegation that defendants' activities were other than "a genuine effort to influence legislation and law enforcement practices." *Cf. Noerr* 365 U.S. at 144, 81 S.Ct. at 533. There is no allegation that plaintiffs were denied "meaningful access" to present their own views before the Contra Costa County Board. *Cf. Trucking Unlimited* 404 U.S. at 512, 92 S.Ct. at 612. For the same reasons that a well-founded state lawsuit cannot be deemed an unfair labor practice, even if prosecuted with retaliatory intent, defendants' lobbying activities in the instant case do not constitute unfair labor practices.

Plaintiffs' first claim is therefore DISMISSED. Fed.R.Civ.P. 12(b)(6).

### 2. *State Court Action*

Defendants correctly identify the right of access to the courts as a protected First Amendment right. However, "[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, ... baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants* 461 U.S. at 743, 103 S.Ct. at 2170. There is also no state interest at stake when the state suit is baseless. *Id.* In that situation, the only interest at stake is the strong federal interest in vindicating federal labor rights. Analogizing to the sham exception

of *Trucking Unlimited,* the *Bill Johnson's Restaurants* Court held that a baseless state suit brought with retaliatory intent was an unfair labor practice.

Relying on *Bill Johnson's Restaurant,* the Ninth Circuit has held explicitly that a union's prosecution of a suit which lacks a reasonable basis in law and which was filed with an improper motive constitutes an unfair labor practice. *International Longshoremen's and Warehousemen's Union v. Pacific Maritime Association, et al.,* 773 F.2d 1012 (9th Cir.1985). In the Court's view, it is appropriate to allow further time for discovery before ruling on this claim. Therefore, the motion is DENIED without prejudice. A renewed hearing is set for December 7, 1988. Defendant's motion papers should be filed by November 9, 1988.

### III.

The final claim challenged in defendants' motions relates to defendants' alleged filing of collective bargaining grievances against a secondary employer, ECI. The complaint alleges improper motives.

■■■ Plaintiffs' own exhibits indicate that defendants' grievances against ECI were successful. As with well-founded state lawsuits, successful grievances to enforce lawful provisions of a collective bargaining agreement cannot constitute unfair labor practices, regardless of any motive to apply secondary pressure. *Truck Drivers, Union Local 705 v. N.L.R.B.,* 820 F.2d 448 (D.C.Cir.1987). Plaintiffs do not claim that what was sought to be enforced was illegal. Nor do they deny that defendants' grievances were successful. Summary judgment as to plaintiff's fourth claim is therefore appropriate.

Accordingly, the motion is GRANTED.

### IV.

Various defendants also seek sanctions. The Court DENIES these motions without prejudice. They may be raised again fol-

lowing the Court's ruling after the December 7, 1988 hearing.

IT IS SO ORDERED.