24    *BE&K Construction Co. v. NLRB*          Nos. 99-6469; 00-5012

Board acted within its broad powers to order BE&K to reimburse the unions for their costs and attorneys' fees. Consequently, we must DENY BE&K's petition for review of the Board decision and GRANT the Board's request for enforcement of that ruling.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0105P (6th Cir.)
File Name:  01a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BE&K CONSTRUCTION COMPANY,

*Petitioner/
Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/
Cross-Petitioner,*

STEAMFITTERS LOCAL 342, et al.,

*Intervenors.*

Nos. 99-6469;
00-5012

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
Nos. 32-CA-9474; 32-CA-9475; 32-CA-12531-1-8.

Argued:  February 1, 2001

Decided and Filed:  April 9, 2001

Before:  DAUGHTREY and GILMAN, Circuit Judges;
COLLIER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**   Maurice Baskin, VENABLE, BAETJER, HOWARD & CIVILETTI, Washington, D.C., for Petitioner. Robert J. Englehart, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent.  Peter D. Nussbaum, ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN, San Francisco, California, Sandra R. Benson, VAN BOURG, WEINBERG, ROGER & ROSENFELD, Oakland, California, for Intervenor. **ON BRIEF:** Maurice Baskin, VENABLE, BAETJER, HOWARD & CIVILETTI, Washington, D.C., for Petitioner.    Aileen A. Armstrong, Anne Marie Lofaso, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., David Habenstreit, NATIONAL LABOR RELATIONS BOARD, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Respondent.     Peter D. Nussbaum, Meera Trehan, ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN, San Francisco, California, Sandra R. Benson, VAN BOURG, WEINBERG, ROGER & ROSENFELD, Oakland, California, for Intervenor. Heather L. MacDougall, McGUINESS, NORRIS & WILLIAMS, Washington, D.C., for Amicus Curiae.

_____

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

misunderstanding of the purpose of the attorneys' fee award in this instance.  As stated by the Board in its ruling:

> We do not award attorneys' fees in *Bill Johnson's* cases because employers' suits are *frivolous*.  We award them because the suits are *unlawful*; they themselves constitute the unfair labor practices for which a remedy must be provided.  As the court of appeals correctly observed in *Geske & Sons*, the Unions would not have incurred those attorneys' fees except for the Respondent's meritless lawsuit, and it is both appropriate and necessary to order that they be made whole and to provide an economic disincentive for engaging in similar unlawful conduct.

*BE&K Constr. Co.*, 329 NLRB No. 68 at 12 (Sept. 30, 1999).

Our review of remedial action ordered by the Board is extremely limited.  Because the award of attorneys' fees to the unions in this matter upon the finding of an unfair labor practice is inherently consistent with the underlying purposes of the National Labor Relations Act, any attempt to undo the administrative sanction would unnecessarily intrude upon the province of a co-equal branch of government acting within constitutional parameters.

### *CONCLUSION*

In this case, BE&K admits that it filed a federal court action against the union defendants in an effort to coerce the unions to cease their administrative and judicial petitioning for strengthened working standards and for stricter enforcement of health and safety requirements.  Because the unions, acting on behalf of affected workers, were engaged in activities protected alternatively by the federal labor laws or by the First Amendment's right to seek redress of grievances, the Board properly determined that BE&K's effort to subvert those plans constituted an unfair labor practice.  Moreover, to effectuate the policies of the National Labor Relations Act and to return the unions to the position in which they would have been without having to defend the unlawful lawsuit, the

The Board's power [to fashion remedies under 29 U.S.C. § 160(c)] is a broad discretionary one, subject to limited judicial review. The relation of remedy to policy is peculiarly a matter for administrative competence. In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience. The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.

*Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (citations and internal punctuation omitted). *See also Geske & Sons*, 103 F.3d at 1378.

In light of the indisputable rulings in these two Supreme Court decisions, if we were to refuse to enforce the Board's order that BE&K reimburse the unions for their attorneys' fees, we would be crossing the line demarcating not only the division of functions of the judicial and executive branches of government, but also the line dividing judicial and legislative areas of authority. The Board's order in this matter could never be construed as "a patent attempt" to frustrate the policies of the Act. In fact, the award of attorneys' fees is nothing more than an effort to correct the effects of BE&K's unfair labor practice by returning the injured parties, at least in part, to the financial positions they occupied prior to the filing of the company's unmerited, retaliatory suit. Moreover, the award replenishing union coffers serves the laudable goal of benefitting a broad range of laborers whose dues dollars initially financed the defense of the federal court action and who stand to benefit from the unions' attempts to enforce health, safety, and zoning regulations.

Furthermore, adherence to the policy advocated by BE&K to reserve attorneys' fee awards to those cases in which the non-prevailing party pursued a *frivolous*, as opposed to a merely unmeritorious, action evidences a basic

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. In the midst of a contentious labor dispute, the petitioner, BE&K Construction Company, filed suit in federal court in California against numerous labor organizations. The purpose of the lawsuit was to squelch certain concerted activity in which the unions were engaging on behalf of members who were on the BE&K construction site as employees of various sub-contractors and to ensure safe working conditions on the job-site. When the district court denied the requested relief, the unions filed complaints with the National Labor Relations Board, alleging that BE&K's court filings constituted an unfair labor practice. Based on the Supreme Court's ruling in *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), the Board agreed with the unions and ordered the petitioner to cease and desist from its illegal activities and, additionally, ordered the company to reimburse the unions for their attorneys' fees and costs. From that decision, the petitioner seeks review, contending (1) that the opinion in *Bill Johnson's* does not apply to non-employee unions; (2) that the district court suit in California did not constitute an unfair labor practice because it did not completely lack a reasonable basis; (3) that there was not substantial evidence to support the Board's ruling that the California litigation was retaliatory; and (4) that the Board was not justified in awarding costs and fees against the petitioner. Also before this court is the Board's related petition for enforcement of its order. For the reasons detailed in this opinion, we conclude that BE&K's petition for review should be denied and the Board's petition for enforcement granted.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 1986 or early 1987, BE&K, an industrial general contractor operating throughout the United States, contracted with USS-POSCO Industries, Inc., to modernize a steel mill in Pittsburg, California. BE&K then formed a joint venture with Eichleay Constructors, Inc., to perform the contract work. According to BE&K, various union groups objected to the BE&K agreement with USS-POSCO because BE&K maintained no collective bargaining relationship or agreement with the unions. BE&K contends that in retaliation for USS-POSCO awarding the modernization contract to a non-union contractor, the unions engaged in various activities to delay the project. Specifically, BE&K maintains that the unions: advocated the adoption and enforcement of a toxic waste emission standard for the construction project, even though the labor groups had no genuine concern that the modernization of the steel mill would be environmentally harmful; picketed and hand-billed at BE&K's premises, without disclosing the nature of their disagreement with the company and encouraged employees of subcontractors to engage in a strike at the project; filed a civil action in California state court, *Piledrivers, Divers, Bridge Wharf & Dock Builders Union Local 34, AFL-CIO, et al. v. USS-POSCO Indus., Inc., et al.*, alleging, among other things, violations of California's Health and Safety Code in an effort to delay the modernization project and increase costs; and initiated contract grievances against Eichleay Constructors, BE&K's joint venturer, under collective bargaining agreements that did not apply to Eichleay.

In response to what BE&K pejoratively terms the unions' "corporate campaign," USS-POSCO and BE&K filed suit in district court in California against numerous labor organizations pursuant to § 303 of the National Labor Relations Act, 29 U.S.C. § 187, seeking damages for the allegedly unfair tactics. The union defendants filed motions for summary judgment with the court, arguing that "the activities challenged in the first and third claims (legislative

Act and of the Supreme Court's *Bill Johnson's* decision, as well as the underlying purposes of national labor legislation, demand an affirmative response.

BE&K relies upon *dicta* in the Sixth Circuit's decision in *Johnson & Hardin* for the proposition that "the harsh remedy of a grant of attorneys' fees" should be invoked only to "discourage future frivolous litigation." *Johnson & Hardin*, 49 F.3d at 244. Such *dicta*, however, was discussed in a situation in which the employer was found *not* to have committed a *Bill Johnson's* unfair labor practice. Any discussion of the propriety of an attorneys' fee award in that case was thus without force or effect in future decisions. Moreover, the authorities cited by this court in *Johnson & Hardin* for the proposition now espoused by BE&K were decisions pre-dating the Supreme Court's *Bill Johnson's* ruling.

By contrast, in *Bill Johnson's* itself, the Court specifically, and without further qualification, stated that, "*if a violation [of § 7 rights in a scenario like that presented in this appeal] is found*, the Board may order the employer to reimburse the [parties] whom he had wrongfully sued for their attorney's fees and other expenses. It may also order any other proper relief that would effectuate the policies of the Act." *Bill Johnson's*, 461 U.S. at 747 (emphasis added).[4] Moreover, the Court had previously explained:

---

[4]In fact, 29 U.S.C. § 160(c) plainly instructs:

If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action . . . *as will effectuate the policies of this subchapter* . . . .

(Emphasis added.)

union organizations for a previous lawsuit filed by other union officials, even though the two union locals admittedly were not parties to the precedent legal action (the *Piledrivers* suit). Even after labor attorneys called this information to BE&K's attention, moreover, the company refused to dismiss the two locals, despite BE&K's failure to uncover, after extensive discovery, any evidence of participation by those parties in the prior litigation. In response, BE&K argues that the continued prosecution of the civil action against the two locals resulted only from the business's belief that all the local unions, even those that were not parties, were "jointly responsible for a jointly devised and executed series of sham proceedings." The very disingenuousness portrayed by such an argument lends additional support to the conclusion that BE&K harbored a deep, anti-union bias that led it to retaliate against the organized labor movement for engaging in governmental petitioning and judicial proceedings protected by the federal constitution and by federal labor legislation.

The plain language of the National Labor Relations Act directs that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). Because substantial evidence in the record convincingly indicates that BE&K did indeed possess an improper, illegal, retaliatory motivation in prosecuting its suit against the union defendants, this court is duty-bound to accept that determination.

### III. Propriety Of Award Of Attorneys' Fees

Having found that the defendant unions can indeed assert § 7 rights in a situation such as that presented here, and having determined that BE&K committed an unfair labor practice by filing a meritless suit against the unions with a retaliatory motivation, we must still determine whether the Board was within its power in awarding attorneys' fees to the unions to compensate them for defending against BE&K's filings. The plain language of the National Labor Relations

lobbying and filing lawsuits, respectively) are protected by the First Amendment," and that "because contractual grievance and arbitration proceedings are the preferred method of resolving labor disputes under federal labor policy," the fourth claim regarding initiation of grievance proceedings cannot result in labor law liability. *See USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council, AFL-CIO*, 692 F. Supp. 1166, 1168 (N.D. Cal. 1988).

Relying upon the rationale adopted by the United States Supreme Court in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), the district court granted summary judgment to the union defendants on the companies' legislative lobbying claim (Claim 1). As noted by the district court:

> The lobbying of state and local legislative bodies implicates the same First Amendment and federalism concerns at issue in *Bill Johnson's Restaurants*. The right to petition a legislative body falls squarely under the "umbrella of 'political expression'." As for federalism concerns, this Court will not lightly infer a Congressional intent to "ignore the substantial state interest in protecting the health and well-being of its citizens." Such an interest is clearly at stake when a toxic waste law is under consideration by a local legislative body.

*USS-POSCO Indus.*, 692 F. Supp. at 1169-70 (citations omitted).

Summary judgment was also granted to the defendants on Claim 4 (initiating collective bargaining grievances). In so ruling, the district court relied upon the fact that even USS-POSCO's and BE&K's own exhibits indicated that the challenged grievances had been successful and, "[a]s with well-founded state lawsuits, successful grievances to enforce lawful provisions of a collective bargaining agreement cannot constitute unfair labor practices . . . ." *Id.* at 1170.

Finally, summary judgment was denied, without prejudice, on the claim that the unions improperly filed a state court action against the companies. In making that ruling, the district judge noted that, while the right of access to the courts is a protected First Amendment right, a baseless state suit receives no such protection. The court thus allowed the parties additional time for discovery in order to ascertain whether the unions' state court lawsuit was indeed baseless. *See id.* at 1170.

Subsequently, after the dismissal of two of USS-POSCO's and BE&K's claims against the defendant unions, USS-POSCO and BE&K filed an amended complaint that not only included some claims similar to those upon which the court had previously granted summary judgment, but also a claim that alleged, for the first time, violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. In response to dispositive motions filed by the union defendants, the district court dismissed the amended complaint as "unacceptable because the first cause of action includes a restatement of several of the claims upon which summary judgment for defendants has already been granted by the Court." The court did grant USS-POSCO and BE&K leave to revise the amended complaint, however, so as to bring the filing in line with existing court rulings.

In that same order, the district court also dismissed USS-POSCO's and BE&K's unfair labor practice claim that was based upon the unions' prosecution of a state court action seeking redress for alleged safety violations at company sites. First, the court dismissed that part of the claim that sought imposition of liability upon two union locals, Steamfitters Local 342, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and Local 302 of the International Brotherhood of Electrical Workers, AFL-CIO, because those organizations were not parties to the state court litigation. Second, the court dismissed the claim against the remaining union defendants who had been parties to the state

in fact, mention the lack of merit of BE&K's lawsuit as *one consideration* in its determination of retaliatory motive, that factor was far from the only evidence in support of the Board's finding. Indeed, if it were, the Board would run the serious risk of conflating the two elements of the *Bill Johnson's* unfair labor practice analysis and thus infringe upon the protections afforded by the petition clause of the First Amendment. Instead, the record now before us contains substantial evidence, albeit circumstantial, from which the Board could reasonably infer a retaliatory motive in BE&K's decision to file suit against the defendant unions in California district court. *See Geske & Sons*, 103 F.3d at 1375 ("[m]otive or intent almost always must be inferred from circumstantial evidence").

First, the United States Supreme Court itself, in *Bill Johnson's*, admitted that the mere finding that an employer's suit against employees (or unions) is unmeritorious warrants the Board "taking that fact into account in determining whether the suit had been filed in retaliation for the exercise of the employees' § 7 rights." *Bill Johnson's*, 461 U.S. at 747. Such a judicial finding was indeed made in this instance.

Second, after much of BE&K's original suit had been dismissed by a summary judgment ruling in favor of the defendant unions, the company filed amended complaints that not only re-alleged many of the same claims upon which the district court had already ruled, but also sought treble damages from the defendants for alleged antitrust violations in banding together for protected § 7 activities. As determined by the Ninth Circuit in *Diamond Walnut Growers, Inc. v. NLRB*, 53 F.3d 1085, 1089 (9th Cir. 1995), the simple request for such punitive damages is another factor to be considered in evaluating an employer's motive in prosecuting its lawsuit.

Finally, an additional inference of retaliatory motive may be made from the fact that BE&K sought recompense from two

Moreover, in analogizing the situation presented in that case to the principles discussed in *Bill Johnson's*, the Court referred solely to labor law situations in which attempts were made *to enjoin* employer-initiated litigation, not situations in which court rulings had already been rendered. *Id.* at 59. Thus, the principles BE&K seeks to extract from *Professional Real Estate Investors* are totally inapplicable to the circumstances presently before us in this case. *See Petrochem Insulation*, 240 F.3d at 31-2.

The law as interpreted by the Supreme Court in *Bill Johnson's* and by this circuit in *Johnson & Hardin* creates a bifurcated system of analysis in determining the protections to be afforded an employer for filing retaliatory lawsuits against employees and unions. Prior to a court ruling on the merits of the employer's suit, the Board will not find an unfair labor practice unless the underlying lawsuit was without reasonable basis. Following a court determination that the employer's claims are without merit, however, there is no longer a need to prevent interference with the First Amendment right to seek judicial redress. At that point, the Board is justified in examining the motives of the employer to determine whether the company unfairly dragged the workers or their representatives into court to further illegal objectives.

In this case, the California district court ruled *on the merits* that BE&K could not succeed on its claims against the unions. Such a finding of an unmeritorious court action is thus sufficient to justify a subsequent investigation by the Board into the motives of the company in filing its lawsuit.

### B.  Retaliatory Motive

In arguing that the Board erred in finding that BE&K filed its suit against the unions with a retaliatory motive, the company contends that the Board inferred the requisite retaliation merely from the fact that BE&K failed on the merits of its underlying cause of action. While the Board did,

action because the federal court concluded that the companies failed to demonstrate that the state claims had been without a reasonable basis in law. In fact, although noting that the unions had failed in the state proceeding to obtain either a temporary restraining order or a preliminary injunction against the companies, the district court recognized that, as a result of the court filing by the unions, federal investigators from the Occupational Safety and Health Administration found "numerous health and safety violations" at the job-site. Consequently, the companies were unable to cite to any evidence "which could support a finding that no reasonable legal and factual basis existed for the filing of the state court action."

Eventually, USS-POSCO and BE&K filed a second amended complaint with the district court. In that document, the companies reasserted many of the same claims they had previously advanced, specifically the allegations of antitrust violations; improper picketing, lobbying, and hand-billing; and improper filing of grievances and court actions. The district court dismissed the complaint insofar as it raised allegations already addressed in prior rulings. Further, because USS-POSCO and BE&K continued to raise such issues, the court imposed sanctions upon the plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure. USS-POSCO then dismissed, with prejudice, its other claims against the unions; as a result, the remaining issues went forward through the discovery process with only BE&K as a party plaintiff.

By court order, however, the district court limited the scope of BE&K's discovery requests. Because the court concluded that the company, in order to succeed on its antitrust claims, must prove both that the unions improperly combined with non-labor groups *and* that the combination had occurred for an illegitimate purpose, the district judge first ordered that discovery be limited to the issue of whether BE&K could establish that the unions actually combined with non-labor entities. *See USS-POSCO Indus. v. Contra Costa County*

*Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 804 (9th Cir. 1994). Because the company could not adduce any evidence in support of that prong of the court-defined analysis, the district judge granted the unions' motion for summary judgment on the antitrust cause of action. At that point in the proceedings, BE&K voluntarily dismissed the remaining allegations of labor law violations, which asserted that the unions had illegally fomented violence against the company. Following entry of final judgment, BE&K appealed to the United States Court of Appeals for the Ninth Circuit, contending that the district court had erred in its explication of antitrust law and in its imposition of sanctions pursuant to Rule 11.

The Ninth Circuit agreed with BE&K that the district court erred in concluding that an adversary must establish both that a union combined with a non-labor group and that the union did not act in its legitimate self-interest before the labor organization's statutory exemption from antitrust liability could be circumvented. Nevertheless, the court found that any error in the district court's analysis was harmless because application of the *Noerr-Pennington* doctrine also provided antitrust immunity to the unions while lobbying government officials or while petitioning administrative agencies or courts, unless the party was engaged in "sham" petitioning. *See id.* at 810.[1] Despite BE&K's arguments to the contrary, the court refused to conclude that the unions' lawsuits were frivolous and brought without regard to the merits. As noted in the court's opinion:

> Here, . . . fifteen of the twenty-nine lawsuits alleged by BE&K as part of the pattern of filings "without regard to the merits" have proven successful. The fact that more than half of all the actions as to which we know the

---

[1] *Noerr-Pennington* immunity principles are derived from the holdings of the United States Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

to establish that BE&K's allegations were without a reasonable basis in fact or law. Instead, because the judicial branch of government had already determined that BE&K's claims against the unions were unmeritorious or dismissed, evidence of a simple retaliatory motive would suffice to adjudge the company guilty of committing an unfair labor practice. The mere failure of company to prevail on its claims against the union in regular judicial proceedings was sufficient to strip BE&K of some of its First Amendment protection because of the company's prior opportunity to avail itself of a judicial forum for redress of its grievances. *See also Johnson & Hardin*, 49 F.3d at 243 ("if the employer does not prevail – the state court judgment is adverse or the suit is withdrawn or otherwise shown to be without merit – the Board may then decide whether the suit was filed with a retaliatory motive"); *NLRB v. Vanguard Tours, Inc.*, 981 F.2d 62, 65 (2d Cir. 1992) (once the employer has lost court action on the merits "-- even if he had a reasonable basis in bringing suit -- the Board may consider the filing of the suit to have been an unfair labor practice").[3]

BE&K directs this court to the Supreme Court decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), in support of its contention that the Court's most recent pronouncements indicate that only baseless or "sham" suits serve to restrict the otherwise unfettered right to seek court resolution of differences. That decision, however, involved only a claim of *Noerr-Pennington* immunity from *antitrust* liability.

---

[3] In *Vanguard Tours*, the Second Circuit did rule that withdrawal of a suit, as opposed to a decision on the merits, should call for the higher standard of lack of a reasonable basis in fact or law before finding an unfair labor practice for filing suit in retaliation for exercise of § 7 rights. *See* 981 F.2d at 66. That case, however, did not address the situation in which the majority of a plaintiff's cause of action is dismissed *on the merits* and only a portion is voluntarily withdrawn. Furthermore, the court recognized that the applicable language from *Bill Johnson's* could be read for the proposition "that withdrawal of the suit is equivalent to a judgment against the employer." *Id.*

and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act." *Id.* at 743.  Second, the Board may enjoin "the prosecution of an improperly motivated suit lacking a reasonable basis." *Id.* at 744.  Finally, and most important for purposes of this litigation:

> In instances where the Board must allow the lawsuit to proceed, if the employer's case in the state court ultimately proves meritorious and he has judgment against the employees, the employer should also prevail before the Board, for the filing of a meritorious lawsuit, even for a retaliatory motive, is not an unfair labor practice.  If judgment goes against the employer in the state court, however, or if his suit is withdrawn or is otherwise shown to be without merit, the employer has had its day in court, the interest of the State in providing a forum for its citizens has been vindicated, and the Board may then proceed to adjudicate the § 8(a)(1) and § 8(a)(4) unfair labor practice case.  The employer's suit having proved unmeritorious, the Board would be warranted in taking that fact into account in determining whether the suit had been filed in retaliation for the exercise of the employees' § 7 rights.  If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorney's fees and other expenses.

*Id.* at 747.

Despite BE&K's attempts to draw fine distinctions from *Bill Johnson's*, the Board appropriately concluded in this matter that the federal district court in California had already determined that the company's claims against the unions were all either without merit or voluntarily dismissed.  Because the Board's general counsel was not, therefore, attempting to *enjoin* a parallel proceeding, there was no need for the Board

results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success.

*Id.* at 811 (footnote omitted).  Consequently, the court affirmed the district court's dismissal of the antitrust claims against the unions; however, the appellate tribunal also reversed the lower court's award of Rule 11 sanctions on the ground that the company re-pleaded previously-dismissed claims in its amended complaint only out of a legitimate, although incorrect, belief that such re-allegation was necessary to preserve the issues for future appeal. *Id.* at 811-12.

During the pendency of these various court proceedings, the NLRB had held in abeyance unfair labor practice complaints originally lodged by two union locals (and joined by numerous other labor organizations) shortly after USS-POSCO and BE&K filed suit against them in California district court.  With the conclusion of that litigation, the NLRB reasserted jurisdiction over the administrative complaints and determined that the companies had indeed attempted to retaliate against the unions and their members for engaging in activities protected by federal labor legislation by filing the meritless lawsuit.  The Board thus ordered BE&K to cease and desist from such illegal actions and directed the company to pay the legal fees and expenses incurred by the union defendants in the *USS-POSCO* litigation.  From that Board decision, BE&K now petitions to this court for review.  The Board has also availed itself of the jurisdiction of this court, seeking enforcement of the Board's order.

## DISCUSSION

### I. Ability of Non-Employee Union to Seek Relief Under Federal Labor Law

Pursuant to the provisions of § 7 of the National Labor Relations Act:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment . . . .

29 U.S.C. § 157. Moreover, § 8(a)(1) of that same act, 29 U.S.C. § 158(a)(1), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce *employees* in the exercise of the rights guaranteed in section 157 . . . ." (Emphasis added.)

The Board concluded in this case that BE&K's filing of a federal court action against the union defendants amounted to just such an unfair labor practice under § 8(a)(1) of the Act. BE&K, of course, disagrees and first asserts that it is interference only with employees, and not with unions, that is prohibited by the Act. Both the company and the unions do agree, however, that the starting point for any analysis of this issue is the seminal decision of the United States Supreme Court in *Bill Johnson's*.

In that case, the Court noted potential First Amendment implications if the Board sanctioned an employer for exercising its right to petition the courts for a redress of grievances. *See Bill Johnson's*, 461 U.S. at 741. Where the lawsuit initiated by the employer lacks a reasonable basis in fact or law, however, and where the action was filed to retaliate against the employee or employees for engaging in activity protected by federal labor legislation, the First Amendment concerns are ameliorated and the Board may actually enjoin the prosecution of the case. The Court went on to hold that, in situations in which the employer has already availed itself of the protections of the court system

of the same issues presented here and even citing the Board's decision in the claims against BE&K. In *Petrochem Insulation*, the D.C. Circuit also concluded that unions, as well as employees, are entitled to the protections afforded by § 7 and the principles enunciated in *Bill Johnson's*. Today, we thus join our sister circuit in that interpretation of federal labor law.

### II.  *Bill Johnson's* Liability

### A.  "Unmeritorious" v. "Lack of Reasonable Basis"

BE&K next contends that even if unions may assert derivative § 7 rights, the Board's decision that the company committed an unfair labor practice by filing suit against the unions in federal court in California is incorrect. According to BE&K, before it may be punished administratively for availing itself of the judicial process, the Board must determine that the company's suit completely lacked a reasonable basis. The explicit language of controlling Supreme Court precedent does not, however, impose such a burden upon the administrative agency.

In *Bill Johnson's*, the Supreme Court recognized that "[a] lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation" because "[r]egardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses to defend against it." *Bill Johnson's*, 461 U.S. at 740-41. Furthermore, "the chilling effect of a . . . lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief." *Id.* at 741. Nevertheless, the employer's right of access to the courts remains an aspect "of the First Amendment right to petition the Government for redress of grievances." *Id.*

In balancing those countervailing interests, the Court distilled certain principles that are of assistance in addressing BE&K's allegations of error in this case. First, "[t]he filing

intended the protection of § 7 to be as narrow as petitioner insists.

*Id.* at 566-67 (citation omitted).

In this case, the lobbying and petitioning in which the unions participated was intended to protect the health of BE&K employees and improve safety conditions at company worksites, as well as to vindicate the rights of sub-contractor employees. Attainment by the unions of even site-specific improvements or promises of diligent enforcement of existing health and safety standards, moreover, clearly establishes helpful precedent for future labor actions and serves to improve, through concerted action, the lot of all working women and men in similar situations. As such, the work of the unions in this case is not so attenuated from the interests of BE&K employees that the "activity cannot fairly be deemed to come within the 'mutual aid or protection' clause" of § 7. *Id.* at 568. Consequently, the Board decision to apply *Bill Johnson's* principles to the *unions'* activities in this case is proper. As held by the Board in this matter:

It would be a curious and myopic reading of these core provisions of the Act [(§ 7's provision of the right to self-organization and of the right to engage in concerted activity for mutual aid or protection)] to hold that, although employees are free to join unions and to work through unions for purposes of "other mutual aid and protection," the conduct of the unions they form and join for those purposes is not protected by the Act. Under that reasoning, conduct that is protected when engaged in by two or more employees together would lose its protection if engaged in by the employees' union on their behalf.

We note further that, in the week prior to oral argument in this matter, the United States Court of Appeals for the District of Columbia filed its decision in *Petrochem Insulation, Inc. v. NLRB*, 240 F.3d 26 (D.C. Cir. 2001), a case raising many

and a judgment adverse to the plaintiff has been rendered, there is no need to meet the heightened burden required to be satisfied when an employee seeks to enjoin an ongoing judicial proceeding. In fact, the governmental interest in ensuring a forum for redress of wrongs has been fulfilled in such instances and Board action is justified upon a showing only of an unmeritorious, rather than "baseless," lawsuit filed for a retaliatory purpose. *See id.* at 749.

Indisputably, the explicit language of *Bill Johnson's* refers only to the potential improprieties of employer-initiated lawsuits filed against *employees* engaged in protected activities. However, *Bill Johnson's* language regarding such suits was restricted to those circumstances, and not to suits filed against *unions*, simply because the Court appropriately addressed only the case then before it. *See Geske & Sons, Inc. v. NLRB*, 103 F.3d 1366, 1377 (7th Cir. 1997).

Nevertheless, BE&K contends that subsequent Supreme Court pronouncements took that next analytical step that was not appropriate in *Bill Johnson's*. Specifically, the company notes that the Court's decision in *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992), explained that, "[b]y its plain terms, . . . the NLRA confers rights only on *employees*, not on unions or their nonemployee organizers." Again, however, an understanding of the nature of the dispute that precipitated the *Lechmere* decision places the Court's seemingly all-inclusive statement in a more restrictive context. In *Lechmere*, the Supreme Court was asked to resolve a dispute concerning the asserted rights of an organizing union to enter upon private property to distribute handbills to company employees to whom the union had alternative means of access. Although ruling that unions had no right under the Act to trespass upon private property *under the circumstances presented in that case*, the Court also recognized that § 7 of the Act, by necessary implication, extended some legislative protection

to unions.[2] Citing its earlier decision in *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113 (1956), the Court stated "that insofar as the employees' 'right of self-organization depends in some measure on [their] ability . . . to learn the advantages of self-organization from others,' § 7 of the NLRA may, in certain limited circumstances, restrict an employer's right to exclude nonemployee union organizers from his property." *Lechmere*, 502 U.S. at 532.

BE&K insists that the "core" right of self-organization is not implicated in this matter and that the non-employee union defendants are thus not entitled to the protections of § 7. Without question, courts have constructed a hierarchy of labor rights, at the highest levels of which is the effort by employees to organize for their collective good. Furthermore, because of the importance of that concerted activity, courts have accorded to organizing unions a "derivative right" to engage in such actions. *See NLRB v. Great Scot, Inc.*, 39 F.3d 678, 682 (6th Cir. 1994). In fact, as the Seventh Circuit has explained, "[i]t would be anomalous to hold that an employer may not interfere with its employees' right to organize by filing baseless lawsuits against them, but that it may achieve the same result by filing a baseless lawsuit against a union attempting to organize the employees." *Geske*, 103 F.3d at 1377.

---

[2]Similarly, the Sixth Circuit decision in *Johnson & Hardin Co. v. NLRB*, 49 F.3d 237 (6th Cir. 1995), upon which BE&K also relies, involved only a situation in which nonemployee union members trespassed onto private property in order to distribute handbills to Johnson & Hardin employees. As a result, that case also stands for the proposition that nonemployee organizers may enter onto private property only under extremely limited circumstances. The case does not, however, stand for the broader legal principle that unions have no § 7 rights whatsoever. *See also Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457, 463 (6th Cir. 1996) (recognizing that "there is a substantial difference between the rights of employees and of nonemployees with respect to the distribution of union literature on privately owned property), *overruled on other grounds in NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115, 1119 (6th Cir. 1997).

Although the activities in which the union defendants in the *USS-POSCO* litigation engaged did not involve overt attempts at organization, some accommodation of those actions by an employer may still be required under applicable labor law. *See, e.g., O'Neil's Markets v. United Food and Commercial Workers' Union, Meatcutters Local 88*, 95 F.3d 733, 737 (8th Cir. 1996) ("although area standards hand-billers are not engaging in 'core' organizing activities and therefore may deserve fewer accommodations, private property owners may, under certain circumstances, be obligated to accommodate them"). Indeed, such an obligation may be imposed even though the members of the union are not even employees of the targeted company.

The term "employee," as used in the National Labor Relations Act, is accorded a broad meaning indeed. Pursuant to the express provisions of 29 U.S.C. § 152(3), the term "employee" (who may, under § 7 of the Act, engage in activities for "mutual aid and protection") "shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise." The Supreme Court, in *Eastex, Inc. v. NLRB*, 437 U.S. 556, 564 (1978), has explained that "[t]his definition was intended to protect employees when they engage in otherwise proper concerted activities in support of employees of employers other than their own." Moreover, the statutorily-protected "employees" may seek improvement of employment terms and conditions through channels outside the immediate employer-employee relationship, including resort to administrative and judicial forums and to legislative appeals. *See id.* at 565-66. Otherwise, as explained in *Eastex*:

> To hold that activity of this nature is entirely unprotected – irrespective of location or the means employed – would leave employees open to retaliation for much legitimate activity that could improve their lot as employees. As this could "frustrate the policy of the Act to protect the right of workers to act together to better their working conditions," we do not think that Congress could have