# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-1383 & 09-1656

SHEEHY ENTERPRIZES, INC.,

*Petitioner,*
*Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent,*
*Cross-Petitioner,*

and

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, STATE OF INDIANA
DISTRICT COUNCIL,

*Intervening-Respondent.*

Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
No. 25-CA-30583

ARGUED JANUARY 21, 2010—DECIDED APRIL 20, 2010

Before EASTERBROOK, *Chief Judge*, and CUDAHY and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Without first reading the document he was signing, James Sheehy, the president of Sheehy Enterprizes, Inc., entered a collective bargaining agreement with the Laborers' International Union of North America, State of Indiana District Council. Under the terms of that agreement, Sheehy Enterprizes became obliged to pay its employees union wages and make union benefit fund contributions on their behalf for all work it performed in Indiana and four counties in Kentucky. In 2007, when confronted by a union representative, Sheehy claimed that the company was not bound by the agreement, prompting the union to file an unfair labor practice charge with the National Labor Relations Board. The Board's general counsel then filed a complaint against the company. An administrative law judge held a hearing and found that Sheehy Enterprizes had committed an unfair labor practice by repudiating the collective bargaining agreement, and the Board issued an order affirming that decision. The company petitions for review of the Board's order, and the Board cross-petitions for enforcement of the same. For the reasons that follow, we deny the company's petition for review and grant the Board's cross-petition for enforcement.

I.

Sheehy Enterprizes, Inc. ("Company"), is an Indiana construction business that specializes in concrete installation. James Sheehy is the Company's president and co-

owner and oversees its day-to-day operations. Until 2003, the Company's business was limited to non-union jobs. But in October 2003, the Company began working as a subcontractor on a student housing project on the Indiana University-Purdue University, Indianapolis ("IUPUI") campus. The general contractor for the project was Wilhelm Construction, a signatory to a collective bargaining agreement ("CBA") between a construction employer association and the Laborers' International Union of North America, State of Indiana District Council ("Union"). Under the CBA, Wilhelm Construction was encouraged to use subcontractors that were signatories to the CBA and was required to notify the Union if any of its subcontractors were not. On October 15, 2003, David Frye, the Union's local business manager, visited the IUPUI construction site and noticed that the non-union Company was working on the project. Frye advised Wilhelm Construction's superintendent that this was in violation of the CBA. The superintendent set up a meeting between Frye and James Sheehy the next day. During the meeting, Sheehy signed an agreement that made the Company a party to the CBA. Sheehy mistakenly believed that the CBA was limited to the IUPUI project when, in fact, it covered all concrete work that the Company would perform in Indiana through March 31, 2004. Frye told Sheehy that the CBA would not apply to work that the Company had previously bid. In accordance with the CBA, the Company paid union wages and made union benefit-fund contributions for the duration of the IUPUI project.

Following the expiration of the CBA on March 31, 2004, the Company began work on another union project at IUPUI involving the construction of a parking garage. On May 21, 2004, Sheehy signed a new agreement binding the Company to a new CBA ("2004 CBA")—the one at issue in this case—that ran from April 1, 2004 until March 31, 2009. The new CBA was essentially the same as the prior CBA, covering all work performed by the Company in Indiana and four counties in Kentucky. But again, without reading the CBA, Sheehy mistakenly thought that the Company would be unionized for only the current IUPUI project rather than for all projects during the next five years. The Company made union benefit-fund contributions on behalf of its employees for the 2004 IUPUI project, the last such contribution occurring on August 27, 2004.

During the next three years, the Company worked mostly for non-union general contractors and did not pay union wages or make benefit-fund contributions. Then, on November 1, 2007, Union business agent Dwight Smith observed several Company employees working at a Walmart project site in Indianapolis that had been bid by a general contractor that was a signatory to the CBA. Not recognizing the workers or the Company, Smith contacted Frye and relayed the information. Frye told Smith that the Company was indeed a party to the CBA and to sign up any employees who did not have union cards. As Smith approached the Company workers, Sheehy met him and told him that the Company was not a union contractor.

Sheehy then spoke with Frye by phone, who informed him that the 2004 CBA was in force between the Union and the Company. Sheehy denied being bound by the 2004 CBA but indicated he was willing to work something out for that particular project. Frye responded that there was nothing to work out because the 2004 CBA was in effect. On January 24, 2008, the Union filed an unfair labor practice charge with the National Labor Relations Board ("Board").

Based on the Union's charge, the Board's general counsel filed a complaint against the Company on April 30, 2008. Following a hearing, an administrative law judge ("ALJ") concluded that the Company had violated §§ 8(a)(1) and (a)(5) of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 151 *et seq.*, by repudiating the 2004 CBA. The ALJ ordered the Company to cease and desist from refusing to adhere to the 2004 CBA and to make its employees and the Union whole for any wages or benefits it had failed to pay. The Company filed its exceptions to the ALJ's decision with the Board. A two-member panel of the Board affirmed the ALJ's determinations and adopted his recommended order with slight modifications not relevant here.[1] The Company

---

[1] The Company argues that the two-member panel of the Board lacked authority to hear this dispute due to the absence of a three-member quorum of the entire Board. The Company recognizes that our decision in *New Process Steel, L.P. v. NLRB*, 564 F.3d 840 (7th Cir.), *cert. granted*, 130 S. Ct. 488 (2009),

(continued...)

petitions for review of the Board's order, and the Board cross-petitions for enforcement.[2]

## II.

Initially, the Company argues that the Board lacked authority to decide the dispute because it did not involve an unfair labor practice.[3] Under § 7 of the Act, employees have the right to bargain collectively through representatives of their own choosing. 29 U.S.C. § 157. Section 9(a) provides that the bargaining agent for the employees in an appropriate unit must be the representative "designated or selected for the purposes of collective bargaining by the majority of the employees." *Id.* § 159(a). It is an unfair labor practice under §§ 8(a)(1) and (b)(1)(A) for an employer or union, respectively, to interfere with, restrain, or coerce employees in the exercise of their rights under § 7. *Id.* §§ 158(a)(1) and (b)(1)(A). Such a violation occurs when a union and employer enter a CBA recognizing the union as the exclusive bargaining agent when it does not enjoy the

---

[1] (...continued)

forecloses that argument, but raises it so that the issue is preserved.

[2] The Union has intervened in support of the Board and urges enforcement of its order.

[3] Under § 10(a) of the Act, "[t]he Board is empowered . . . to prevent any person from engaging in any unfair labor practice . . . affecting commerce." 29 U.S.C. § 160(a).

support of a majority of employees. *Int'l Ladies Garment Workers' Union v. NLRB*, 366 U.S. 731, 737-38 (1961). But in § 8(f), Congress has carved out an exception to this general rule for employers in the construction industry. Under that provision, construction employers can lawfully enter into so-called "pre-hire agreements" with unions that do not have majority support. 29 U.S.C. § 158(f). The parties agree that the 2004 CBA was a § 8(f) agreement.

In *John Deklewa & Sons*, 282 N.L.R.B. 1375, 1387 (1987), *enforced sub nom. International Association of Bridge, Structural & Ornamental Workers, Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1988) ("*Deklewa*"), the Board held that a § 8(f) agreement confers a limited § 9(a) representative status on a union signatory and that an employer signatory commits an unfair labor practice under §§ 8(a)(1) and (a)(5) by unilaterally repudiating the agreement while it is in force.[4] A few years later in *NLRB v. Bufco Corp.*, 899 F.2d 608, 611 (7th Cir. 1990), this court approved the *Deklewa* rule in enforcing an order of the Board that, applying *Deklewa*, found an employer had committed an unfair labor practice under §§ 8(a)(1) and (a)(5) by repudiating its § 8(f) pre-hire agreements with a union.

---

[4] Section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." 29 U.S.C. § 158(a)(5). Where a CBA is in place, the duty to bargain collectively "mean[s] that no party to such contract shall terminate or modify such contract." *Id.* § 158(d).

Clearly then, under the law of this circuit, the Board has the authority to hear an unfair labor practice dispute that, like this one, concerns the unilateral repudiation of a § 8(f) agreement.[5]

We turn, then, to the merits of the petitions. Our review of a Board ruling is deferential. We will accept the Board's factual findings if they are supported by substantial evidence in the record considered as a whole. *FedEx Freight E., Inc. v. NLRB*, 431 F.3d 1019, 1025 (7th Cir. 2005) (citation omitted). We give special deference to its credibility determinations and will not disturb them absent extraordinary circumstances. *Id.* at 1026. We will uphold the Board's legal determinations as long as they are not irrational or inconsistent with the

---

[5] The Company also claims that the Board lacked authority over this unfair labor practice dispute because § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), creates a cause of action for unions to sue for violations of a CBA in federal court. There is no merit to that argument. Although it is true that the effect of § 301 is that the Board's authority over an unfair labor practice "is not exclusive" when the activity also constitutes a breach of a CBA, "[t]he authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301 . . . ." *Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1962). Thus, in such cases, the district courts and the Board have concurrent jurisdiction. *William E. Arnold Co. Carpenters Dist. Council of Jacksonville & Vicinity*, 417 U.S. 12, 18 (1974); *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1123 (7th Cir. 1998). The choice between these fora was the Union's prerogative.

Act.[6] *Id.* Where, as here, the Board adopted the ALJ's findings of fact and conclusions of law, it is the ALJ's determinations that we review. *Id.*

Sheehy admitted that he signed the 2004 CBA on May 21, 2004, on behalf of the Company, without reading it.[7] That agreement was effective until March 31, 2009. But both Frye and Sheehy testified that on November 1, 2007, the Company, through Sheehy, denied that it was bound by the CBA. Thus, substantial and uncontroverted evidence in the record supports the ALJ's finding that the Company violated the Act by repudiating the 2004 CBA.

In response, the Company argues that the general counsel's complaint was barred because the Union's January 24, 2008, charge (upon which the complaint was based) was filed more than six months after the Union allegedly learned (in 2004 and 2005) of the Company's repudiation of the 2004 CBA. Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor

---

[6] In its briefs, the Company contends that our review of the Board's interpretation of the 2004 CBA is de novo. *NLRB v. Int'l Bhd. of Elec. Workers, Local Union 16*, 425 F.3d 1035, 1039 (7th Cir. 2005). Yet the Company does not challenge the Board's interpretation of the agreement and does not advance any specific argument about how the Board's interpretation was incorrect. Therefore, we have no occasion to review the Board's interpretation of the 2004 CBA.

[7] There is no evidence in the record that the Union misrepresented the terms of the CBA to Sheehy or knew of his alleged misunderstanding of the nature of the agreement.

practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). The Company, however, did not assert this statute of limitations affirmative defense until it filed its exceptions to the ALJ's decision with the Board. The Board did not consider the defense because it was untimely, having not been raised in the Company's answer or at the hearing with the ALJ. The Board's refusal to address the Company's § 10(b) defense conformed with its usual practice (not challenged by the Company) of deeming waived affirmative defenses that are not raised in an answer to the general counsel's complaint or at the hearing before the ALJ. *Geske & Sons v. NLRB*, 103 F.3d 1366, 1371 n.8 (7th Cir. 1997); *NLRB v. Wizard Method, Inc.*, 897 F.2d 1233, 1236 (2d Cir. 1990) (citing *Fed. Mgmt. Co.*, 264 N.L.R.B. 107, 107 (1982)). Similarly, we will not consider this argument that was not properly presented in the administrative proceeding. *Id.*

The Company did argue to the ALJ—based on what it termed a "common law waiver theory"—that by waiting until several years after it first learned of the Company's repudiation of the CBA to bring an unfair labor practice charge, the Union impliedly waived its right to complain of the Company's actions. In rejecting that argument, the ALJ chose not to credit Sheehy's testimony that he told Frye on two occasions in 2004 and 2005 that the Company would not follow the CBA for non-union projects. Instead, the ALJ credited Frye's testimony that he did not speak with Sheehy between May 2004 and November 2007 and did not learn that the Company was not complying with the CBA until November 2007.

In challenging that finding, the Company does not suggest that extraordinary circumstances exist that would justify our disregarding the ALJ's credibility determination. And where, as here, the ALJ chose between two conflicting views of the evidence, the substantial evidence standard of review requires us to uphold his factual finding that the Union did not learn of the Company's repudiation until November 2007. *New Process Steel*, 564 F.3d at 844 (citation omitted). The ALJ's rejection of the Company's "common law waiver" argument was thus appropriate.

Last, the Company claims that the Board should have deferred from hearing this unfair labor practice dispute in favor of the arbitration procedures provided for in the CBA, which is its usual policy when such grievance remedies are available under a CBA. *Collyer Insulated Wire*, 192 N.L.R.B. 837, 839 (1971); *see also Chicago Tribune Co. v. NLRB*, 974 F.2d 933, 938 (7th Cir. 1992). But the Company failed to make this non-jurisdictional argument to the Board, which means that absent extraordinary circumstances—and none are claimed by the Company—we may not consider it. 29 U.S.C. § 160(e).

III.

Based on the foregoing reasons, we conclude that substantial evidence in the record supports the ALJ's finding that the Company committed an unfair labor practice by unilaterally repudiating the 2004 CBA. The Company waived its affirmative defense that the § 10(b) statute of limitations bars the Board's complaint, and the

ALJ's rejection of the Company's common law waiver argument is supported by substantial evidence. Furthermore, because the Company failed to present to the Board its argument that the Board should have deferred from hearing this dispute in favor of arbitration, we cannot consider it. We have examined all other arguments advanced by the parties and see nothing that requires comment. Accordingly, the Company's petition for review is DENIED and the Board's cross-petition for enforcement of its order is GRANTED.