NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 23, 2010
Decided July 28, 2010

**Before**

Hon. Daniel A. Manion,  *Circuit Judge*

Hon. Ilana Diamond Rovner,  *Circuit Judge*

Hon. William J. Hibbler, *District Judge*[*]

| | |
|---|---|
| No. 09-2895 | Appeal from the United States District Court for the Central District of Illinois |
| Parkland Environmental Group, Inc., | |
| *Plaintiff-Appellant*, | No. 06 CV 03238 |
| v. | **Jeanne E. Scott**, *Judge.* |
| Laborers' International Union of North America, Laborers' Local 477, | |
| *Defendant-Appellee*. | |

**O R D E R**

---

[*] The Honorable William Hibbler, District Judge for the Northern District of Illinois, is sitting by designation.

Parkland Environmental Group is a small, family-owned asbestos abatement company in Springfield, Illinois.  In March or April of 2004, it signed a "project only" agreement with Laborers' Local 477, a local chapter of the Laborers' International Union of North America. That single-page agreement was limited to Parkland's project at the White Oaks Mall. Around the same time, Parkland and the Union signed another, much longer, collective bargaining agreement covering all work done by Parkland in the Local 477 territory from May 1, 2003 to April 30, 2009. Two years later, the Union filed a grievance against Parkland for performing work in the Local 477 territory without adhering to the agreement. The grievance was submitted to arbitration with a grievance committee, as provided in the agreement.

Parkland was surprised by the grievance.  It does not dispute that its vice president, David Stowers, signed the agreement in question. But it claims that Stowers did not read the agreement and that the Union led him to believe that this agreement was a "project only" agreement covering just a project at Washington Street, similar to the White Oaks Mall agreement. Parkland attended the arbitration and there argued that it was not bound either by the contract generally, or the arbitration clause specifically, because the agreement was for one project only and did not apply to the project in dispute. The grievance committee ruled against Parkland and directed it to pay the Union $21,016.

Parkland sued in federal court to vacate the award under Section 301 of the Labor Management and Relations Act and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. The Union counter-sued for enforcement. Both sides moved for summary judgment, and the district court granted the Union's motion. It held that the dispute was within the scope of the arbitration clause, that Parkland's only defense—a challenge to the validity of the entire agreement—was a matter subject to arbitration, and that the arbitration award drew its essence from the contract.  Parkland appeals.

Whether Parkland and the Union "agreed to arbitrate [this] dispute is a question for the courts to decide," but "if the parties have in fact agreed to arbitrate their dispute, they have bargained for *the arbitrator's* interpretation of their contract, not ours."  *United Steel Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 535–36 (7th Cir. 2008).  It is clear (and Parkland no longer really contests) that the dispute was within the scope of the arbitration clause in the agreement and that the award drew its essence from the contract.  Rather than challenge the scope of the arbitration clause, Parkland focuses its argument on the validity and scope of the agreement in the first place.  It does not deny that it signed the agreement, but only whether it was valid when the Union filed its grievance.  It argues that it was misled by the Union and signed the agreement believing that it was a project-only

agreement and, further, that it had repudiated the agreement prior to the grievance by consistently failing to conform to the agreement. If at the time of the dispute it was not bound by the agreement at all, it argues, it was not bound by the arbitration clause. Therefore, under Parkland's theory, we must decide whether there was a valid agreement at the time of the dispute before we can decide whether the parties agreed to arbitrate the dispute.

Not so. The scope of an agreement is a term of the agreement and it too is subject to arbitration. *Id.* at 537. Moreover, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). This includes a claim of fraud in the inducement of the contract generally, which is similar to what Parkland argues, as opposed to a claim of fraud in the inducement of just the arbitration provisions. *Id.* at 444–45 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)). Parkland claims that it is specifically challenging the arbitration clause, but its argument is not particularized to the arbitration clause: the challenge to the arbitration clause stands or falls with the contract at a whole, and so it was subject to, and resolved by, arbitration. Thus, the district court correctly limited its review to the scope of the arbitration clause and whether the decision drew its essence from the contract.[1]

Parkland also argues that because the Union brought its grievance more than six months after Parkland had allegedly repudiated the agreement, it is barred by the statute of

---

[1]Parkland also seems to argue that the agreement was invalid because the Union did not obtain the support of a majority of Parkland employees necessary for the Union to be recognized as the exclusive bargaining entity for Parkland employees under Section 9(a) of the National Labor Relations Act. We see no legal reason why the fact that the agreement had never been converted into a Section 9(a) agreement would prevent it from being a valid Section 8(f) pre-hire construction agreement. *See Sheehy Enterprizes, Inc. v. N.L.R.B.*, 602 F.3d 839, 843 (7th Cir. 2010) ("[I]n § 8(f), Congress has carved out an exception to this general rule for employers in the construction industry. Under that provision, construction employers can lawfully enter into so-called "pre-hire agreements" with unions that do not have majority support."). But even if there were merit to Parkland's argument regarding the status of the agreement under Section 9(a), this argument goes to the validity of the agreement, not its formation. *See Granite Rock Co. v. Teamsters*, No. 08-1214, 561 U.S. ___ , 2010 WL 2518518 at *7 (June 24, 2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for the courts to decide."). This argument, like the claim of fraud in the inducement, is subject to arbitration under the arbitration clause in this case.

limitations.  But Parkland did not raise a statute of limitations defense below, so it has waived this non-jurisdictional issue on appeal.  *McKinney Restoration, Co. v. Illinois Dist. Council No. 1 of Int'l. Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 873 (7th Cir. 2004).  The judgment of the district court is therefore AFFIRMED.